Marshall P. SAFIR, Arnold Weissberger and Sapphire Steamship Lines, Inc., Plaintiffs,

v.

James W. GULICK, Acting Maritime Administrator, Maritime Administration, United States Department of Commerce, et al., Defendants.

No. 68 C 643.

United States District Court
E. D. New York.

Feb. 20, 1969.

Isadore B. Hurwitz, New York City, for plaintiffs.

Gilbert S. Fleischer, New York City (Joseph P. Hoey, U. S. Atty., and Louis E. Greco, Attorney in Charge, Admiralty & Shipping Section, Dept. of Justice, of counsel), for defendants.

## MEMORANDUM and ORDER

DOOLING, District Judge.

Plaintiffs sue to compel the defendant public officers (a) to cease paying operating differential subsidies to ocean carriers who were members of a "conference" (Atlantic and Gulf American-Flag Berth Operators, or AGAFBO), and (b) to sue the carriers to recover subsidies heretofore paid to them. The ground of the complaint is that the Federal Maritime Commission determined on December 12, 1967, that AGAFBO had reduced its rates to a noncompensatory and unreasonable level in an attempt unfairly to compete with plaintiff Sapphire Steamship Lines, Inc., that the rates so knowingly fixed were so unreasonably low as to be detrimental to the nation's commerce and therefore violative of 46 U.S.C. § 817(b) (5), that in consequence AGAFBO's rate reduction violated 46 U.S.C. § 814, and that the Maritime Commission's determination of violation mandated the defendants to invoke 46 U.S.C. § 1227 which (in part) provides:

"It shall be unlawful for any contractor receiving an operating-differential subsidy * * * to continue as a party to or to conform to any agreement with another carrier or carriers by water, or to engage in any practice in concert with another carrier or carriers by water, which is unjustly discriminatory or unfair to any other citizen of the United States who operates a common carrier by water exclusively employing vessels registered under the laws of the United States on any established trade route from and to a United States port or ports.

"No payment or subsidy of any kind shall be paid directly or indirectly out of funds of the United States or any agency of the United States to any contractor or charterer who shall vio-

late this section. Any person who shall be injured in his business or property by reason of anything forbidden by this section may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Defendants have moved to dismiss on the grounds that venue is improper, that the complaint fails to state a claim on which relief can be granted, and that indispensable parties—the subsidized carriers—have not been joined. Alternatively defendants seek a transfer to Washington, D. C. under 28 U.S.C. § 1404(a).

It is concluded that the motion to dismiss must be granted.

On venue it is enough to say that if the action were maintainable, venue as to the individual plaintiffs would appear to be correct under 28 U.S.C. § 1391(e) (4), and that the proper venue as to Sapphire cannot be determined as a matter of fact on the present papers, assuming, as is likely, that under Section 1391(e) (4), the residence of a corporation is at its principal place of business or at its principal office in its state of incorporation.

Plaintiffs' essential argument in support of the complaint is that the Maritime Commission's determination that AGAFBO violated 46 U.S.C. § 814 (Section 15 of the Shipping Act), by setting conference rates that were contrary to 46 U.S.C. § 817(b) (5) [Section 18(b) (5) of the Shipping Act] because so unreasonably low as to be detrimental to the nation's commerce, made it the unqualified and absolute duty of the defendants to cut off subsidy payments to the AGAFBO carriers and to sue to recover past subsidy payments from them. The argument continues—that plaintiffs, as the competitor against whom the alleged predatory rates were made, and its proprietors, have standing to enforce the duty by this suit, treated either as a species of administrative review under the Administrative Proce-

dure Act, or as a suit for mandamus or prohibition (5 U.S.C. § 701 et seq.; 28 U.S.C. § 1651).

■ Plaintiffs show no right to the relief they seek under the Administrative Procedure Act. They are not persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" as 5 U.S.C. § 702 requires. To put the matter in perspective, if the Maritime Commission had authorized AGAFBO to charge predatory rates until Sapphire ceased to offer its low rates, plaintiff Sapphire would no doubt be entitled to seek judicial relief against the agency action under Section 702. But it has no competitive interest in seeing AGAFBO's carriers punished by the defendants' withdrawal of the subsidies, for that is unrelated to the rate matter and to plaintiff Sapphire's competitive shipping interest: other innocent lines may at once be admitted to the routes and subsidized. Plaintiff Sapphire's legal interest is bounded by the agency-regulated conference rates, their legality, and their effect on its own independent rates, and its legal interest does not extend to the defendants' imposing the punitive sanction. Cf. Berry v. Housing and Home Finance Agency, 2d Cir.1965, 340 F.2d 939; Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency, 7th Cir.1962, 310 F.2d 99.

■■ 46 U.S.C. § 1227 (Section 810 of the Merchant Marine Act, 1936) certainly confers private rights of action: it grants a triple damage remedy to anyone injured in his business or property by a subsidized carrier's participating with other carriers in an agreement or practice which is "unjustly discriminatory or unfair to any other citizen * * * who operates a common carrier by water" with American flag vessels on any "established trade route" to and from United States ports. But the prohibition against the paying of subsidies to an operator who violates the section is not susceptible of interpretation as creating by implication a second and distinct private right, a right to coerce the defendants to withdraw any further subsidies. As noted above, the "injured" carrier under Section 1227 has no "right" to have the "established trade route" free of subsidized competition (since other subsidized carriers may replace the offending carriers); rather, it has a "right" only to be free of "unjustly discriminatory or unfair" concerts of action by subsidized carriers. And the very existence of the triple damage remedy (which plaintiff has invoked by an action in the District of Columbia) for an invasion of that "right" tends strongly to suppress any possible implication of a second private right to have the offending carriers' subsidies terminated. See Isbrandtsen Co. v. Federal Maritime Board, D.C.1958, 159 F.Supp. 884. Finally, withdrawal of the subsidy, if thought of in terms of its effect on competition with the "injured" carrier on the "established trade route," comes too late to ameliorate the competitive disadvantage, since it would appear that it cannot occur in the typical case until after the unfair or discriminatory practice has been terminated by Commission action under Section 15 of the Shipping Act (46 U.S.C. § 814). The prohibition of further subsidy payments is, it must be concluded, a matter of peculiarly public concern and not of private interest. Cf. Rural Electrification Administration v. Northern States Power Co., 8th Cir. 1967, 373 F.2d 686, 692–696; Kansas City Power & Light Co. v. McKay, 1955, 96 U.S.App.D.C. 273, 225 F.2d 924, 932. Note Hardin v. Kentucky Utilities Co., 1968, 390 U.S. 1, 5–7 and note 7, 88 S.Ct. 651, 19 L.Ed.2d 787.

It should be added that Flast v. Cohen, 1968, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, applies by its terms only to cases challenging the disbursement of federal funds as violative of the First Amendment. It cannot help plaintiffs' case here.

■■ Viewed as an action for mandamus the suit must fail because the acts it seeks to coerce are not clear and unconditional duties that defendants are

unqualifiedly obligated to perform but are discretionary acts of responsible government requiring interpretation of a statute of some difficulty, and the evaluation of the conduct of each of the subsidized carrier members of the conference. Examination of the Maritime Commission decision discloses that it is concerned primarily with the AGAFBO rate reductions, and it does not consider the individual role of each AGAFBO carrier. The rates condemned were in effect for eleven months and had been terminated (it may be because of Sapphire's lack of success) before the Commission made its findings. The literal reading of the sentence prohibiting any subsidy payment to any carrier "who shall violate this section" by the very rigor of its terms presents problems of interpretation. Since the consequences are so grave, must "violation of [the] section" be determined by the defendants upon an independent review of the duration and impact of the rate or practice, the justification advanced for it, the degree of the individual carrier's complicity in the practice or rate and other factors relevant and appropriate to a determination that is to result in the loss of all subsidies and not simply in a termination of the rate as predatory or the practice as discriminatory? Must arrest of subsidy payments be permanent and extend to all the carrier's subsidies for vessels in all its trade routes? That is, does the language require a permanent blacklisting of the carrier? Is the statute, if unqualified in depriving the carrier of any *right* to continued subsidization, a mandatory and unconditional requirement that the government officials terminate payments in every case of established "violation" without exception, or is there a discretion in the government officials to temper the rigor of the statute to the circumstances of reported transgression? These and many other questions must arise in interpreting and invoking the seemingly simple command of a single brusque sentence embedded in a complex of statutes reflecting and reconciling converging sets of Congressional policy determinations. They do not begin to be answered by the Maritime Commission's decision that the rate reduction transgressed Sections 18(b) (5) and 15, 46 U.S.C. §§ 817(b) (5) and 814. Hence that decision could not be the foundation of a mandamus commanding the defendants to terminate the subsidies; the defendants' responsibilities in the premises were of a larger and more complex order and involved exercises of governmental discretions of marked difficulty. See Adams v. Nagle, 1938, 303 U.S. 532, 542–544, 58 S.Ct. 687, 82 L.Ed. 999; Panama Canal Co. v. Grace Line, 1958, 356 U.S. 309, 317–319, 78 S.Ct. 752, 2 L.Ed.2d 788 [the language of Section 10 referred to is now 5 U.S.C. § 701(a) (2)]; Mitchell v. McNamara, 1965, 122 U.S.App.D.C. 224, 352 F.2d 700.

As the action is not maintainable it is unnecessary to decide whether the subsidized carriers would not be indispensable parties and the trustee in bankruptcy of plaintiff Sapphire, a required additional plaintiff or the sole proper representative of Sapphire's claims. Similarly, while good sense, economy of effort and convenience suggest the desirability of a transfer to the District of Columbia, it is not necessary to decide that matter.

Accordingly, it is

ORDERED that the motion to dismiss the complaint, on the ground that it does not state a claim upon which relief can be granted, is granted and the remaining motions are not passed upon; and the Clerk is directed to enter judgment that plaintiffs take nothing and that the action is dismissed with costs as taxed by the Clerk.