Marshall P. SAFIR, Appellant,

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al.

AMERICAN EXPORT LINES, INC., et al., Appellants,

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al.

Marshall P. SAFIR

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al., American President Lines, Ltd., Farrell Lines, Inc., Prudential Lines, Inc., PPS Steamship Co., Inc., Appellants.

Marshall P. SAFIR

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al., American Export Lines, Inc., Lykes Brothers Steamship Co., Inc., Moore-McCormack Lines, Inc., United States Lines, Inc., Appellants.

AMERICAN PRESIDENT LINES, LTD., et al., Appellants,

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al.

Marshall P. SAFIR

v.

Elizabeth Hanford DOLE, Secretary of Transportation, et al., American Export Lines, Inc., Lykes Brothers Steamship Co., Inc., Moore-McCormack Lines, Inc., United States Lines, Inc., Appellants.

Nos. 81-2271, 81-2389, 81-2394, 81-2395, 81-2396 and 82-1008.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 29, 1982.

Decided Sept. 30, 1983.

476

T.S.L. Perlman, Washington, D.C., and Elmer C. Maddy, New York City, with whom William H. Fort, Walter H. Lion, New York City, Verne W. Vance, Jr., and William L. Gardner, Boston, Mass., were on the brief for American Export Lines, Inc., et al., appellants in 81–2389, 81–2395 and 82–1008, appellees in 81–2271 and 81–2394.

Robert T. Basseches, Washington, D.C., with whom Timothy K. Shuba, Daniel H. Margolis, Warren L. Lewis, Washington, D.C., Verne W. Vance, Jr., and William L. Gardner, Boston, Mass., were on the brief for American President Lines, Ltd., et al., appellants in 81–2394, 81–2396 and appellees in 81–2395 and 82–1008.

Marshall P. Safir, pro se, for appellant in 81–2271 and appellee in 81–2389, 81–2394, 81–2395, 81–2396 and 82–1008.

Allen van Emmerik, Bruce G. Forrest and William Kanter, Dept. of Justice, Washington, D.C., entered appearances for Elizabeth Hanford Dole, Secretary of Transp., et al., appellants in 82–1008 and appellees in 81–2271, 81–2389, 81–2394, 81–2395 and 81–2396.

Before WRIGHT and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

In these consolidated cases, appellant Marshall P. Safir, whose former shipping business (terminated in 1967) was the victim of predatory pricing by certain competing carriers, seeks to set aside an order of the Secretary of Commerce which directs the recovery under § 810 of the Merchant Marine Act of some, but not all, subsidies paid to those carriers by the United States during the period of such unlawful activity. He appeals the district court's refusal to require the Secretary to recover all past subsidies and enjoin payment of future subsidies. We find that there is no reasonable likelihood that Safir will in the future be a competitor of these companies, whether or not their power to compete is impaired by the action requested of the government with regard to subsidies; that the relief he seeks is therefore not likely to benefit him in any legally cognizable fashion, so as to remedy the injury of which he complains; and that he thus lacks standing to pursue the present suit.

The carriers affected by the Secretary's order likewise seek to set it aside on various grounds. The lines which the Secretary ordered to return subsidies request us to find that the statute precludes any recovery of subsidies paid prior to an administrative finding of illegal activities; we hold that the doctrine of collateral estoppel bars them from litigating this issue. The lines which the Secretary found to have "technically violated" § 810 but from which he ordered no subsidy recovery have requested that we reverse the finding of a technical violation; we hold that they have no standing to challenge a pronouncement from which no tangible injury flows.

## I

Since the facts underlying this litigation have been adequately recounted in two prior circuit opinions, *Safir v. Kreps,* 551 F.2d 447 (D.C.Cir.), *cert. denied,* 434 U.S. 820, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977), and *Safir v. Gibson,* 417 F.2d 972 (2d Cir.1969), *cert. denied,* 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970), we will only sketch them here; but even a sketch of this protracted controversy can hardly be brief. Section 810 of the Merchant Marine Act, 46 U.S.C. § 1227 (1976), allows any person injured in his business or property by illegal competitive agreements among shippers to recover treble damages from carriers guilty of such practices.[1] It also provides that no carrier engaging in such practices shall receive any government subsidies. Safir's shipping company was bankrupted, in part as a result of predatory pricing by a group of carriers collectively known as the Atlantic and Gulf American Flag Berth Operators (AGAFBO). He settled his treble damages claim with the carriers for about $2.5 million; he has been attempting to compel the United States to withhold all future subsi-

---

1. The Section provides that:

It shall be unlawful for any contractor receiving an operating-differential subsidy under subchapter VI of this chapter or for any charterer of vessels under subchapter VII of this chapter to continue as a party to or to conform to any agreement with another carrier or carriers by water, or to engage in any practice in concert with another carrier or carriers by water, which is unjustly discriminatory or unfair to any other citizen of the United States who operates a common carrier by water exclusively employing vessels registered under the laws of the United States on any established trade route from and to a United States port or ports.

No payment or subsidy of any kind shall be paid directly or indirectly out of funds of the United States or any agency of the United States to any contractor or charterer who shall violate this section. Any person who shall be injured in his business or property by reason of anything forbidden by this section may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

dies to the carriers, and to recover all subsidies paid since the predatory pricing started.

After Safir's requests that the Maritime Administration take such action were rejected without satisfactory explanation, he filed an action in the Eastern District of New York to compel it. That court dismissed the case for failure to state a claim. *Safir v. Gulick*, 297 F.Supp. 630 (E.D.N.Y. 1969). The Second Circuit Court of Appeals reversed, holding that the complaint did state a claim, that Safir had standing to bring the suit, and that the Maritime Administration could not decline to recapture past subsidies that were legally recoverable without making a considered decision to adopt that course. The court's reasoning with regard to standing, which we need neither endorse nor reject here, was that recovery of the subsidies would benefit Safir because he was a potential competitor of the AGAFBO lines and therefore stood to gain from impairment of their financial position. *Safir v. Gibson, supra*, 417 F.2d 972.

The Maritime Administration held a hearing, after which the hearing examiner recommended that the government recover about $10 million in subsidies paid to the four AGAFBO lines which served the same trade routes as Safir ("the trade lines"). He did not recommend full recovery because of a variety of what he considered mitigating factors. He further found that the three AGAFBO lines which did not serve the same routes as Safir ("the non trade lines") had not participated in setting the rates, had not benefited from Safir's company's demise, and had not violated § 810; he therefore recommended no subsidy recovery from them. *Sapphire Steamship Lines, Inc.*, 3 Maritime Subsidy Bd. Dec. 174 (1972).

The hearing examiner's recommended decision was modified by the Maritime Subsidy Board to reduce the amount of recovery ordered from the trade lines because it considered additional mitigating factors applicable, and because it disagreed with the examiner's views as to the types of subsidies affected by § 810. The Board also held that the non trade lines, although in no way benefiting from the predatory pricing, had "technically violated" § 810 by being members of the conference which had set the predatory rates. In light of the passive nature of their participation, however, the Board still felt no recovery of subsidies was appropriate. *Investigation of Alleged Section 810 Violation*, 3 Maritime Subsidy Bd. Dec. 128 (1973), *final order on review*, 14 Shipping Reg.Rep. (P & F) 77 (Maritime Subsidy Bd. 1973).

The trade lines then petitioned the Secretary of Commerce to review the Board's decision. The Secretary found that still further mitigation was appropriate, and reduced the total recovery to about $1 million. He affirmed the finding of the non trade lines' "technical violation."

Safir and the carriers appealed from the Secretary's order to the District Court for the District of Columbia, Safir requesting that the Secretary recover all the subsidies, the trade lines requesting that he recover none, and the non trade lines requesting that the finding of technical violation be reversed. *Safir v. Dent*, No. 74–1474 (D.D.C. Oct. 21, 1975); *American Export Lines, Inc. v. Dent*, No. 74–1788 (D.D.C. Oct. 21, 1975); *American President Lines, Ltd. v. Dent*, No. 75–0077 (D.D.C. Oct. 21, 1975). With those appeals, this circuit's involvement in the litigation commenced.

The District Court for the District of Columbia initially dismissed Safir's claim on summary judgment. It did not rule specifically on the trade lines' contention that Safir lacked standing. It stayed the carriers' action for review pending appeal of Safir's claim. No. 74–1474 (D.D.C. Oct. 21, 1975). Safir appealed, and this court, after finding that he had standing, reversed the summary judgment and remanded the case to the district court. *Safir v. Kreps, supra*, 551 F.2d 447. On remand, the district court decided both Safir's and the carriers' claims. It upheld the Secretary's determination that the non trade lines had technically violated § 810, but struck down most of the Secretary's order, finding that the reasons for mitigating the subsidy recoveries from

the trade lines were not supported by substantial evidence on the record as a whole. Instead, the court adopted the hearing examiner's recommended decision ordering the $10 million recovery. *Safir v. Klutznick,* 526 F.Supp. 921 (D.D.C.1981). The trade lines then moved for relief from the judgment under Federal Rule of Civil Procedure 60(b) on the ground that Safir lacked standing. The court denied that motion. Both Safir and the carriers have again appealed.

## II

We deal first with Safir's appeal. We do not reach the merits, because we have concluded that Safir has no standing to pursue his claim and we therefore have no jurisdiction to entertain it.

It is now well established that the doctrine of standing is designed not merely to serve the convenience of the courts by assuring adversarial presentation of the issues to be decided, *see Flast v. Cohen,* 392 U.S. 83, 98–101, 88 S.Ct. 1942, 1951–53, 20 L.Ed.2d 947 (1968); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), but is a constitutional limitation upon the jurisdiction of the courts importantly related to the doctrine of separation of powers. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473–74, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Thus, even Congress itself may not confer standing to sue where the case and controversy requirements of Article III of the Constitution are not met. *Valley Forge, supra,* 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–39, 96 S.Ct. 1917, 1923–25, 48 L.Ed.2d 450 (1976). One of the irreducible Article III minima is that the plaintiff's alleged injury must be likely to be redressed if the requested relief is granted.

*Eastern Kentucky, supra,* 426 U.S. at 38, 96 S.Ct. at 1924.

The injury which this plaintiff has alleged at all stages of this litigation is the impairment of his relative competitive position in the shipping business produced by the government's refusal to impose upon the violators of § 810 the added cost of forgoing and returning government subsidies. As we acknowledged in our 1977 decision, however, "Safir must continue to be a potential competitor of the shipping lines which illegally took the subsidies if he is to benefit from a decision to recover such subsidies." *Safir v. Kreps, supra,* 551 F.2d at 451. Safir has consistently asserted a "desire" to reenter the shipping business. *See, e.g.,* Brief for Marshall P. Safir as Appellee at 1, Nos. 81–2394, 81–2395, 81–2396, 82–1008 (D.C.Cir. filed May 24, 1982); Reply of Marshall Safir to Defendants' Responses to His Motion for Summary Judgment & Defendants' Cross Motions at 5, No. 74–1474 (D.D.C. filed June 11, 1975). That desire may well have been potentially achievable in 1969, when the Second Circuit found the following:

> Without deciding whether a potential competitor or a former victim who has washed his hands of the business would have an interest protected by § 810, we hold that an interruption of operations like that here does not sufficiently alter the victim's interest to take it out of the protection of § 810 with regard to raising the issue of the Administrator's refusal to seek recovery of past payments.

*Safir v. Gibson, supra,* 417 F.2d at 978. It may even have been a plausible hope six years ago, when we said that "appellees and intervenors . . . have pointed to no change in circumstances which would cause us to question the [above quoted] conclusion of the Second Circuit." *Safir v. Kreps, supra,* 551 F.2d at 451. It is now, however, unquestionably clear that Safir is not likely to be a competitor to the AGAFBO companies.

To continue to believe the contrary would be not only to ignore the accumulating evidence of the past 16 years in which Safir's only known participation in the shipping

business has been his *pro se* prosecution of this litigation. It would also require us to disregard his statement at oral argument of this case that even if the government were ordered to recover all the subsidies at issue, he still would not reenter the shipping business, but would need a court order requiring that the subsidy monies be paid into a "common fund" which would then be distributed to him and, perhaps, to other shippers injured by the predatory pricing; and that it is this money, and only this money, which he will invest in cargo transportation. Yet Safir has not requested this "common fund" recovery in the present litigation, and has cited no authority that would permit the disbursement of Treasury funds in this fashion. Without finding it necessary to rule on this novel approach to the use of the public fisc, we are confident in saying that at least it is not likely this money, if recovered by the government, will find its way into the plaintiff's hands.

In sum, Safir can no longer realistically be considered to be what we have said he must be in order to maintain this litigation: a "potential competitor." *Safir v. Kreps, supra,* 551 F.2d at 451. Given his record of nonparticipation in the shipping business, and his statements described above, the likelihood of his benefiting from the order which he seeks is a good deal less than the likelihood of indigents' benefiting from the Internal Revenue Service's revocation of tax exemptions for hospitals that refuse to provide free service to indigents—which the Supreme Court found inadequate to sustain standing in *Eastern Kentucky, supra.* Likewise this court has denied standing to plaintiffs whose claims that they would benefit from the remedies they requested were considerably stronger than Safir's.

*See Physicians' Education Network, Inc. v. Department of Health, Education & Welfare,* 653 F.2d 621 (D.C.Cir.1981); *American Society of Travel Agents, Inc. v. Blumenthal,* 566 F.2d 145 (D.C.Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978); *Public Citizen v. Lockheed Aircraft Corp.,* 565 F.2d 708 (D.C.Cir.1977). In all of these cases, we found that the constitutional requirement of standing was not met because the prospect that the remedy sought would produce tangible benefit to the plaintiffs was speculation. It is at least as speculative here, where this plaintiff has told us he will be competing against the shipping companies, weakened through the disgorgement of subsidies which he seeks, only on the occurrence of an eventuality that we have no reason to believe will come to pass.

The relief Safir seeks may benefit him, of course, physically, providing him the satisfaction of seeing his adversaries stung yet again for their misdeeds against him; and the mere threat of the requested relief may benefit him economically, should the shipping lines conclude that they would be better off to purchase the resignation of this "private attorney general" than to continue the litigation. (Safir has suggested that he would be amenable to such an arrangement.[2]) But the former is not the sort of benefit from which Article III standing is constructed, and the latter not even the sort that a decent system of law should tolerate.

The action we take today does not disregard the doctrine of law of the case, pursuant to which legal and factual determinations once made are generally binding in subsequent proceedings in the same

---

2. *See, e.g.,* Memorandum of Points and Authorities of Marshall P. Safir in Support of His Motion for Summary Judgment at 14:

*The leverage which the threat of total recovery would have generated if vigorously asserted by an impartial Secretary/administrator would have been sufficient to force an accomodation [sic] with plaintiffs [sic] competitors for his reentry—following which discretion in mitigation would have been an acceptable solution.*

*The Department of Commerce, instead, acted to defeat the victim it was under mandate to assist, by removing this leverage (and the chance thereby to profit) by a token settlement with the violators in lieu of prosecution.*

No. 82–1064, Plaintiff's Appendix at 172 (filed Mar. 29, 1982) (emphasis in original).

case.[3] It is true that we found Safir to have standing in *Safir v. Kreps, supra,* 551 F.2d 447, but that was only a determination that he had standing *at that time.* Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal. *See DeFunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). A case involving a standing issue similar to that here was *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), where the plaintiff sought a declaratory judgment invalidating a New York law prohibiting distribution of anonymous literature in election campaigns. At the time suit was brought, the candidate against whom plaintiff's anonymous handbill had been directed was in Congress and, it was alleged, would be a candidate for reelection, at which time plaintiff would seek to distribute the same handbill. However, by the time of remand to the district court after an initial Supreme Court appeal, the congressman had accepted a judicial appointment and was thus (in the Supreme Court's view) "most likely" to run for Congress again. *Id.* at 109, 89 S.Ct. at 960. The Supreme Court held, in the second appeal, that it was error for the district court, on the remand, to decide the issue of whether a case or controversy existed on the basis of the facts when the action was commenced. Rather, it should have determined whether the facts existing at the time of the hearing on re-

mand established the "immediacy and reality" necessary to constitute an actual controversy. *Id.* So also here, we must evaluate compliance with the Article III requirements on the basis of the facts as they exist at the present time.

■ It is irrelevant, therefore, whether we were correct in our determination in 1977 that the plaintiff's hope of reentering the shipping business was, at that time, a hope joined with a reasonably achievable intent. We neither reexamine nor contradict that determination here.[4] What we do find, however, is that in light of six more years of ineffectual hoping, and of Safir's own current acknowledgment that it is not merely the government's failure to drain the economic resources of his would-be competitors which stays his entrepreneurial hand, there is no longer anything more than a speculation (if even that remains) that the relief sought in this case will benefit the plaintiff. The courts therefore have no jurisdiction to entertain his complaint.

### III

■ This leaves two further issues to be resolved. The first of these is presented by the "trade line" carriers' appeal, the second by that of the "non trade line" carriers.

The trade line carriers have requested us to set aside the Secretary's decision ordering them to repay approximately $1 million in subsidies paid them during the violation period. They contend that § 810 does not permit recovery of any subsidies paid to a shipper before administrative determination

---

3. Application of the doctrine is in any event discretionary, *see Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), and there are a number of recognized grounds for declining to invoke it that would embrace the present case. The doctrine does not preclude courts from reexamining issues that go to their constitutional power over the case, *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry.,* 520 F.2d 91, 95 & n. 22 (D.C.Cir. 1975), or issues affected by newly discovered facts, *see Zenith Laboratories, Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

4. Much less do we question the correctness of the Second Circuit's determination of standing in *Safir v. Gibson, supra,* 417 F.2d 972. Just as the doctrine of law of the case does not make our 1977 determination relevant to the issue of present standing, so also the doctrine of collateral estoppel does not make that 1969 determination relevant. *See United States v. Crow Dog,* 532 F.2d 1182, 1188 (8th Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977) (transfer of indictment for trial did not preclude subsequent denial of motion to transfer superseding indictment since the only issue determined by the prior order was that a fair trial in the District of South Dakota could not be had at that time on that indictment).

that it has engaged in an "unjustly discriminatory or unfair practice."

This contention is at odds with a prior holding of the Second Circuit in *Safir v. Gibson, supra,* 417 F.2d 972, which collaterally estops the trade lines from relitigating the issue. In *Gibson,* the Second Circuit stated:

We think [the statute's] concern also extends to the interest of a former victim in the recovery of subsidies improperly paid in the past to lines which are still his competitors, although here the duty of the Administrator may be less absolute than is the obligation to cease payments to current violators. *In the nature of things, few complaints of violations will be received and acted on until after some further payments have already been made.* Recovery of such payments poses an added cost on the violators and thus will partially make up to the victim for the burden which the earlier payments indirectly imposed on him. *Although the statute does not expressly authorize the Maritime Administrator to recover subsidies improperly paid in the past, common law principles would permit this under the subsidy contract in the absence of a statutory prohibition, and we find no such prohibition here.*

*Id.* at 977 (footnote omitted, emphasis added). The trade lines argue that this passage is not incompatible with their position, since by "subsidies improperly paid in the past," the court may have meant subsidies paid after determination of violation. But that is utterly irreconcilable with the court's reason for implying the remedy: "In the nature of things, few complaints of violations will be received and acted on until after some further payments have already been made." *Id.*

The trade lines further argue that the Second Circuit's statement was mere dictum and hence does not trigger application of collateral estoppel, *see Association of Bituminous Contractors, Inc. v. Andrus,* 581 F.2d 853, 860 (D.C.Cir.1978), since it was made in the course of discussing Safir's standing rather than the merits of the case.

If the dismissal by the Eastern District of New York had been based solely on lack of standing, and if the Second Circuit had done no more than reverse that, it would be possible to assert (although the language does not readily bear this interpretation) that the decision did not "go[ ] to the merits," *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), but only established that Safir's grievance was arguable. In fact, however, what was on appeal was a dismissal for failure to state a claim. In reversing it, the Second Circuit remanded with instructions to proceed in accordance with its opinion which stated, among other things, that Safir was entitled to a "considered decision [by the Maritime Administrator] whether to recover the subsidies." *Safir v. Gibson, supra,* 417 F.2d at 978. Such a decision would have been unnecessary (and Safir's complaint would properly have been dismissed for failure to state a claim) unless the Administrator had legal authority to invoke that sanction. It might be argued (though the trade lines have not done so) that the statement was dictum at least to the extent that its application went beyond subsidies paid after determination of violation, since only the latter would have been necessary to defeat the motion to dismiss. We might credit such an argument if we were confident that at least some post-determination payments had been alleged. We are not. (Counsel for the lines stated at oral argument that the record in the present case does not reveal whether any post-determination payments had been made at the time of the Second Circuit's decision.) As pointed out in connection with our discussion of the proper interpretation of the Second Circuit's statement, extension to predetermination payments was an essential element of its justification. We are not prepared to draw the line between dictum and holding at a point that both produces a holding devoid of its expressed justification and assumes a state of the record that may not have existed.

The trade lines' final argument, not made in their brief but mentioned at oral argu-

ment, is that they did not participate in the Second Circuit proceedings, as application of collateral estoppel would ordinarily require. *See Consumers Union of the United States, Inc. v. Consumer Product Safety Commission*, 590 F.2d 1209, 1217 (D.C.Cir. 1978), *rev'd on other grounds sub nom. GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). We find that their participation was sufficient to invoke the doctrine.

The parties to the case in which the Second Circuit's 1969 *Safir v. Gibson* decision was rendered were Safir, his brother-in-law, their shipping company, and various government officials. The AGAFBO lines did not participate. The Second Circuit expressed concern that its opinion might " 'as a practical matter impair or impede' their ability to protect their interests." 417 F.2d at 976 n. 4, *quoting* Fed.R.Civ.P. 19(a). The court accordingly directed the district court on remand not to feel that anything in its opinion precluded it from considering any new arguments made by the AGAFBO lines should they intervene or be joined as defendants. *Id.* This, however, they "sedulously abstain[ed]" from doing until matters had proceeded considerably further. *Safir v. Gibson*, 432 F.2d 137, 145 (2d Cir.) (on petition for rehearing), *cert. denied sub nom. American Export Isbrandtsen Lines, Inc. v. Safir*, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970). In the interim, in accordance with the Second Circuit's original decision, the Maritime Administration had started a proceeding to determine whether the government should recover subsidies from the AGAFBO lines, and if so, in what amounts. One of the questions the Administration announced it would consider was whether the lines had violated § 810. Safir, however, believing that issue was foreclosed by a prior Federal Maritime Commission finding, requested the District Court for the Eastern District of New York to issue an injunction preventing a second hearing on the point. The district court declined to do so, but the Second Circuit reversed. Only at that point did the trade lines petition for leave to intervene to seek

rehearing, and on only that issue. Leave was granted, the lines were permitted to file briefs, and the motion for rehearing was denied. 432 F.2d at 145–46. It thus appears that the trade lines had full opportunity to argue the issue under discussion here, first when they were in effect invited by the Second Circuit to intervene in the original proceeding, and in all probability (given the court's expressed concern about prejudicing them) when they finally did intervene in a closely related proceeding before the same court a year later; the issue was argued by another party, the Maritime Administration, and decided by the court; and administrative and judicial proceedings involving the trade lines for the past 13 years have relied on the court's ruling. This is enough in law and reason to work a collateral estoppel. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 114, 88 S.Ct. 733, 740, 19 L.Ed.2d 936 (1968); *Penn-Central Merger & N & W Inclusion Cases*, 389 U.S. 486, 505, 88 S.Ct. 602, 611, 19 L.Ed.2d 723 (1968); *Defenders of Wildlife v. Andrus*, 77 F.R.D. 448, 452 (D.D.C.1978).

## IV

■ The final issue in this case is that raised by the non trade lines, which appeal from the finding in the Secretary's order that they technically violated § 810 by remaining members of the AGAFBO conference. In the circumstances of this case, we conclude that there is no standing to challenge this determination. The Secretary is not charged by law with opining regarding violations of the Act, but rather with acting to prevent and punish them. He has taken no such action with regard to the non trade lines, and his estimation of a technical violation could be considered, technically, dictum. His pronouncement has not even had the effect of casting moral blame upon the affected lines, since the asserted violation is qualified by the term "technical."

In these circumstances, we cannot find that the non trade lines have suffered that concrete, tangible injury necessary to confer standing. *Sierra Club v. Morton*, 405

U.S. 727, 740–41 n. 16, 92 S.Ct. 1361, 1368–69 n. 16, 31 L.Ed.2d 636 (1972). This conclusion not only accurately reflects the law, but it also accurately reflects the estimation of the parties. Counsel for the non trade lines acknowledged in oral argument that the lines were intent on pressing this point only to guard against the risk that Safir might induce the courts to attach some consequences to the otherwise innocuous determination of technical violation. Since, as we have found, Safir has no power to do so, the risk is non-existent and so is the injury accruing from the Secretary's determination. We therefore need not (and indeed cannot) resolve in this case an issue that could be of great consequence elsewhere if and when a similar alleged technical violation is actually enjoined or punished.

## V

 We have concluded as a result of our deliberations that Safir and one group of the AGAFBO appellants (the non trade lines) have no standing, and that we therefore have no jurisdiction to entertain their complaints. With regard to the appeal of the trade line appellants, we have determined that the district court properly denied the relief requested by reason of the doctrine of collateral estoppel.

Where an appellate court finds that jurisdiction does not exist—even when, as we may assume to be the case with regard to Safir, jurisdiction first terminates during the pendency of the appeal—"[t]he established practice ... is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). Since the district court's proper disposition of the trade lines' complaint is bound up in the same judgment applicable to all the consolidated cases, we vacate that judgment in its entirety, and remand with direction to dismiss the complaints of Safir and the non trade lines for lack of jurisdiction, and to dismiss

the complaint of the trade lines on the merits.

*So ordered.*