**MTS, INC., Plaintiff,**

v.

**200 EAST 87TH STREET ASSOCIATES, Defendant.**

No. 94 Civ. 9081 (RWS).

United States District Court, S.D. New York.

Sept. 18, 1995.

Patterson, Belknap, Webb & Tyler, New York, NY (Kim J. Landsman, Michael J. Mellis, of counsel), for Plaintiff.

Law Offices of Michael B. Kramer, New York, NY (Michael B. Kramer, Artemis Croussouloudis, of counsel), for Defendant.

SWEET, District Judge.

Plaintiff MTS, Inc. ("Tower") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. to compel the arbitration sought in the third claim of its complaint and to dismiss the first counterclaim of defendant 200 East 87th Street Associates, Inc. ("Associates") seeking attorneys' fees. Associated has moved under the same Rule to dismiss Tower's first claim for rent reimbursement and for an order awarding Associates $237,-330.58 on its first counterclaim for attorneys' fees. The claims are alleged to arise out of the lease between the parties dated March 17, 1989 (the "Lease") for retail space at the building at 200 East 87th Street, New York, New York (the "Building").

Upon the following findings and conclusions and all the prior proceedings, the motions of Tower will be granted, and those of Associates denied.

### Prior Proceedings

This action arises as a sequel to the prior litigation between the parties, *200 East 87th Street Associates v. MTS, Inc.*, 793 F.Supp. 1237 (S.D.N.Y.), *aff'd mem.*, 978 F.2d 706 (2d Cir.1992) ("Prior Litigation") in which the positions of the parties were reversed. There Tower counterclaimed that whether or not the Lease had been properly terminated for failure of Associates to satisfy a condition subsequent, Associates had anticipatorily breached the Lease by, among other things, constructing the building in such a way as to make it impossible to deliver to Tower the required amount of floor space on the second floor of the Building.

Associates replied Tower was estopped to claim that breach because it had gone forward knowing that Associates could not deliver the required amount of second floor space and that pursuant to the arbitration clause in the Lease any deficiency in floor space must be dealt with by an appropriate rent abatement to be awarded in arbitration.

The Prior Litigation was the subject of an opinion of this Court rendered on July 21, 1992 (the "Opinion") which was appealed to the Second Circuit which affirmed without opinion on September 23, 1992.

This subsequent action was commenced on December 19, 1994. The instant motion was filed on May 11, 1995, argument was heard on August 2, additional papers were submitted and on August 11 the motion was considered fully submitted.

### The Facts

The findings of fact determined in the Prior Litigation have not been contravened by any submission on this motion and are therefore adopted as previously found, some of which are repeated below for the sake of clarity.

The parties entered into the Lease as of March 17, 1989 for retail space on the sub-basement, basement, first, and second floors of the Building. The Lease provided at ¶ 59(A) that either side could terminate the Lease if Associates did not construct the Building and obtain a Temporary Certificate of Occupancy ("TCO") by March 17, 1992. Associates did not obtain a TCO by that date, and Tower sent a notice on April 7, 1992, exercising its option under ¶ 59(A) to terminate the Lease.

Associates then initiated the Prior Litigation seeking,

> a declaration that the Landlord is not in violation of any of the provisions of the Lease based upon the failure to obtain a TCO for the Building by March 17, 1992,

that the notice terminating the Lease is void, that the Landlord be afforded a reasonable opportunity to cure its breach and that Tower be enjoined and restrained from terminating the Lease....

*Id.* at 1239.

Tower asserted counterclaims that Associates had anticipatorily breached the Lease by making it impossible to comply with two elements of "Owner's Work" specified in ¶ 46 of the Lease: Associates had built the Building in a manner that made it impossible to satisfy both ¶ 46(4)'s requirement of thirteen foot ceiling heights, and ¶ 46(3)'s requirement of 11,850 square feet, plus or minus 5%, of second floor space, as well as certain other provisions of the Lease, including an obligation of quiet enjoyment of the premises promises in ¶ 22 of the Lease.

Tower's counterclaim in the Prior Litigation alleged that "the square footage of the second floor is less than that required under ¶ 46(3) of the Lease." *Id.* at 1239–40. Paragraph 46(3) of the Lease required Associates to deliver to Tower " 'approximately 11,850 square feet of second level store space, all +/−5%.' " *Id.* at 1254 and the Court found that, "[t]he actual amount of space allocated to Tower on the second floor is now 10,600 square feet, which is 10.5% less than that called for in ¶ 46(3)." *Id.* at 1254.

The Opinion in the Prior Litigation held that Associates had not breached the Lease, that "the parties intended the Landlord to have a right to cure its failure to obtain a TCO by March 17, 1992, within a reasonable period," that Associates had done so, and that Tower therefore "may not terminate the Lease" based on the failure to obtain a TCO. *200 East 87th Street Associates v. MTS, Inc.,* 793 F.Supp. at 1250. On the issue of second-floor space, the Opinion stated that ¶ 61(B) of the Lease "precludes Tower from litigating the square footage issue." *Id.* at 1254. "[T]he shortfall in square footage [on the second floor] would not constitute an anticipatory repudiation of the Lease ... Paragraph 61(B) specifically provides that the remedy for such an occurrence is a rent-reduction proportionate to the difference be-

tween the actual and projected square footage." *Id.* at 1256.

The Opinion also stated as follows:

Tower argues that ¶ 61(B) applies to disputes over the overall square footage of the Tower space and not to disputes, such as this one, over the square footage of individual floors. However, ¶ 61(B) provides no basis for such an interpretation. The term "square footage of store space" is defined in that paragraph to include "square footage on ground floor, second floor, basement and sub-basement levels." Were Tower's interpretation of this paragraph to be accepted, one would have to rewrite that definition to state "square footage of store space means the total of the square footage on the ground floor, second floor, basement and sub-basement levels."

*Id.* at 1255 n. 6.

Paragraph 59(C) of the Lease provided that Tower's monthly rent obligation of $87,-347.75 "shall commence on the date which is seven (7) months after delivery of possession of the demised premises in accordance with Paragraph B hereof ..." Paragraph 59(B) stated that Tower "shall receive possession of the demised premises for the purpose of construction of Tenant's Work upon substantial completion of Owner's Work set forth in Article 46."

Associates sent Tower a letter on January 22, 1992 which stated that "the premises ... will be substantially complete and possession thereof shall be delivered to you as of Thursday, January 30, 1992." By letter of January 30, 1992, Tower sent notice to Associates that they were rejecting the notice of substantial completion based on the following:

1. The Owner's continued failure to demonstrate that the demised premises are zoned for retail use as required by the Lease.

2. The Owner's failure to construct and deliver the premises as required by the Lease.

3. The Owner's failure to comply with the terms of the substantial completion as defined in the Lease.

4. The Owner's failure to respond to our letter of December 27, 1991.

In its Opinion the Court did not consider points 1 and 4. *200 East 87th Street Associates,* 793 F.Supp. at 1254 ("Items 1 and 4 are not in issue here.").

On the question of substantial completion, as defined in Paragraph 59(B) of the Lease, the Court reviewed the items put forward by MTS as incomplete, and concluded that the differential was *de minimis* and did "not render substantial performance of the contract objectively impossible." *Id.* at 1254.

The same arguments were repeated by the parties on the appeal.

Following the Second Circuit's affirmance, Tower requested that the second floor square footage dispute be submitted to arbitration. Associates refused, contending that ¶ 61(B) applies only to disputes over overall square footage and not to disputes relating to an individual floor. The overall square footage of the Building exceeds 23,000 square feet.

On September 17, 1992, the parties executed an agreement (the "Agreement"), in which Tower agreed to pay rent under protest, as if the commencement day of the lease were August 30, 1992, on the condition that:

> in the event that it is subsequently determined by agreement of the parties or by a court of competent jurisdiction that the commencement date for the term of the Lease is subsequent to August 30, 1993, then within three days ...

On October 21, Chemical Bank, the Landlord's construction lender, wrote to Tower, and, in relevant part, said "Chemical Bank understands that Tenant is or will be paying rent under the Lease if the commencement date of the Lease is August 30."

### Standards For Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd,* 954 F.2d 62 (2d Cir.1992).

The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady,* 863 F.2d at 210; *see also Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983); *Swan Brewery Co. v. United States Trust Co.,* 832 F.Supp. 714, 717 (S.D.N.Y.1993).

The remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Here both parties seek summary judgment, and no factual dispute has been presented.

### Arbitration Will Be Compelled

The issue of the appropriate forum and remedy for dealing with the inadequacy of the second floor space was presented by Tower as a defense in the Prior Litigation. This Court held that such a defense did not constitute a breach of the Lease because of the arbitration provision contained in Paragraph 61(B) of the Lease.

Issue preclusion "prevents previously litigated issues from being relitigated, thereby producing finality in judgments." *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991), *cert. denied sub. nom.*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). The issue of arbitration for space insufficiency meets the four-part test for issue preclusion applicable in this Circuit:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for the litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.* at 642 (quoting *Gelb v. Royal Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987)).

██ An issue is necessary to a prior judgment for issue preclusion purposes if its disposition "was the basis for the holding with respect to the issue and not 'mere dictum.'" *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204 (D.C.Cir.1986), quoting *Safir v. Dole*, 718 F.2d 475, 481–82 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1268, 104 S.Ct. 3563, 82 L.Ed.2d 864 (1984). This Court's rulings on the arbitrability of second floor square footage dispute were not mere dicta, but essential to adjudicating the Prior Litigation.

"Since the very purpose of declaratory relief is to achieve a final and reliable determination of legal issues, there should be no quibbling about the necessity principle. Every issue that the parties have litigated and that the court has undertaken to resolve is necessary to the judgment, and should be precluded." 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4421 at p. 208 (1981); *Restatement (Second) Judgments* § 33 Comment b, p. 334 (1982) ("[i]f a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment").

Arbitration regarding the second floor space will be compelled, consistent with the decision of the Prior Litigation.

### Associates Are Not Precluded From Asserting Their Position In The Arbitration Proceeding

In the Prior Litigation, Tower sought in its Second Counterclaim to terminate the Lease on the basis of Associates' alleged anticipatory breach of the Lease by delivering less than 11,850 square feet (less 5%) of space on the second floor of the Building. No other relief was sought by Tower with respect to the second floor, and no claim of rent abatement for the alleged shortfall was made.

The Opinion dismissed Tower's claim of anticipatory breach based upon the alleged square footage shortfall on the second floor, by finding that Tower was, as claimed by Associates, estopped from asserting breach based upon their knowledge and their actions.

In addition, the Opinion held alternatively that if Tower were not estopped, the proof adduced by Tower did not support its claim of anticipatory breach, noting that any dispute between the parties as to the square footage of any floor or the entire space was subject to arbitration and that Paragraph 61B provided a monetary remedy agreed to by the parties in the event of a shortfall in the square footage of the Building.

The Opinion in footnote 6 also directly addressed the issue presented by the instant motion and interpreted Paragraph 61(B) as requiring a floor by floor calculation of the square footage of floor space, an aside which was not central to the determination of whether or not the issue was capable of constituting a material breach, as opposed to a right to arbitration. The footnote also failed to note the precatory language of Paragraph 46(3). What was essential to the prior decision was the conclusion that any shortage of square footage under the Lease was arbitrable and not the grounds for the assertion of a material breach.

> "Generally, a party to a legal proceeding may not relitigate issues previously determined in other litigation to which he or she was a party. See *Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 716 (S.D.N.Y. 1987)." *David v. Showtime/The Movie*

*Channel, Inc.,* 697 F.Supp. 752, 762 (S.D.N.Y.1988).

Associates is therefore free to defend against Tower's claim in the arbitration, and it will be the arbitrator's task to determine the issue of the shortfall of square footage and whether or not it is to be calculated on an overall or on a floor by floor basis. That issue differs from the previous determination that a shortfall of square footage on the second floor, if any, did not constitute a material breach in the Lease.

The issue of whether Tower was entitled to a rent reduction was not before the Court in the Prior Litigation.

> The broader doctrine of *res judicata* prohibits relitigation of the same cause of action ... the narrower principle of *collateral estoppel* comes into play in a suit involving a cause of action different than the one already tried. In such a case, the principle precludes litigation not of such matters as *might* have been tried, but only of those issues which were *actually* tried and decided and were essential to the earlier judgment. [*C.I.R. v.] Sunnen, supra,* 333 U.S. [591] at 597–98, 68 S.Ct. [715] at 719–20, [92 L.Ed. 898 (U.S.Mo.1948),] *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 726–728 (2d Cir.1981).

*650 Park Avenue Corp. v. McRae,* 665 F.Supp. 228, 232 (S.D.N.Y.1987).

An issue is "essential" when "recognized by the parties as important and by the trier as necessary to the first judgment." *Restatement of Judgments 2nd,* § 27, Comment j (1982).

 The Court in stating that the square footage issue raised by Tower in the Prior Litigation would have been subject to arbitration had it not been barred by estoppel, did not make a determination that Tower is in fact entitled to a rent reduction. "Under New York law, a party who has obtained a final judgment in its favor is not normally precluded from relitigating a subsidiary issue which was decided against it." *Pinkney v. Keane,* 737 F.Supp. 187 (E.D.N.Y.1990).

The Court, citing Professor Siegel, noted that an appeal could not be had on a subsidiary issue:

> A full day in court in New York Practice includes the appellate process if the loser wants it, and the situation in which an appeal is foreclosed can thus be regarded as an inadequate day in court. The Restatement takes that position too, holding that the estoppel will not apply against a person who could not have obtained appellate review of the judgment. *Siegel,* New York Practice, 615 (1978).

At best, this Court's statement regarding arbitration of the square footage was a subsidiary issue and was not fully and fairly litigated in the context of a claim for rent abatement. Issue preclusion does not apply as to footnote 6.[1]

### Associates Are Not Entitled To Attorneys' Fees

 Associates' First Counterclaim for attorneys' fees and costs rests on ¶ 52 of the Lease, which states that Tower shall indemnify Associates for its reasonable attorneys' fees and disbursements suffered or incurred "as a result of any breach" of the Lease by Tower. Associates is barred from asserting this claim by the principle of claim preclusion.

 "*Res judicata,* or claim preclusion, prevents the subsequent litigation of any ground of recovery that was available in a prior action, whether or not it was actually litigated or determined." *Balderman v. U.S. Veterans Admin.,* 870 F.2d 57, 62 (2d Cir. 1989). Associates did not seek recovery of its attorneys' fees and costs pursuant to ¶ 52 during the Prior Litigation. Associates' Complaint in the Prior Litigation sought a declaration that it is "not in violation of any provision of the Lease based upon an alleged failure to obtain a Temporary Certificate of Occupancy for the Building," and an injunction that Tower "be enjoined and restrained permanently and pendente lite from terminating the Lease based upon the Notices to Cure dated March 17, 1992." An action that

---

1. Even Homer nods. *See* Don Juan, Lord Byron Ch. III, st. 98. ("We learn from Horace, 'Homer sometimes sleeps'").

seeks only declaratory relief may be subject to a restrictive application of claim preclusion principles. However, a prior action, such as the Prior Litigation, that sought both declaratory and coercive relief is subject to the "claim preclusion rules that apply to actions for coercive relief alone." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4446, at p., 401 (1981); *see e.g., Cimasi v. City of Fenton,* 838 F.2d 298, 299 (8th Cir.1988).

In *Driscoll v. Humble Oil & Refining Company,* 60 F.R.D. 230, 234 (S.D.N.Y.1973) (Tenney, J.), *aff'd mem.,* 493 F.2d 1397 (2d Cir.1974), the plaintiff sought to recover its attorney's fees and litigation expenses incurred during a prior litigation between plaintiff and defendant. In granting defendant's motion for summary judgment on claim preclusion grounds, Judge Tenney held that,

> [a]ttorney's fees are "a part of the cause of action upon which recovery was previously made," [citation omitted], and thus are barred by *res judicata.* Similarly, if plaintiff "desired to recover [its] expenses of litigation in the prior case ... [it was] required to assert such [claim] in that litigation.

Like the plaintiff in *Driscoll,* if Associates desired to recover its attorneys' fees and costs in the Prior Litigation, it was required to assert such claims in the Prior Litigation. *See also Rooney v. U.S.,* 694 F.2d 582, 584 & n. 4 (9th Cir.1982).

In any event, Tower did not breach the Lease in connection with the Prior Litigation. By launching an action on an expedited basis, Associates were able to obtain a judgment voiding Tower's attempt to terminate the Lease before Tower's obligations under the Lease commenced. That was, in fact, the basis for this Court's holding that Tower had no right to invoke the covenant of quiet enjoyment contained in ¶ 22 of the Lease. *200 East 87th Street Associates v. MTS, Inc.,* 793 F.Supp. at 1256–57.

The Court of Appeals' decision in *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 818 (2d Cir.1990), is directly on point. The lessor in that case claimed a right to recover its attorneys' fees based upon a provision similar to ¶ 52,[2] based on its prior defense of a lawsuit brought by the lessee that did not involve any alleged breach of the lease by the lessee, but rather, alleged breaches by the lessor. The Court of Appeals held that the lessor could not recover its attorneys' fees because there was no actual, much less alleged, breach of the lease by the lessee. *Id.*

Like the lawsuit at issue in *Prime Management,* the Prior Litigation did not involve any allegations that Tower breached the Lease. No breach of the Lease has been established in this proceeding.

### Tower Is Not Precluded From Raising Its Rent Reimbursement Claim

In the First Litigation, the Court was presented with the issue of the possibility of substantial completion and resolved the issue finding that the differences between the requirements of the Lease and the actual construction of particularized deficiencies were "insubstantial" and "*de minimus*" such that they did "not render substantial performance of the contract objectively impossible." The Court did not find that substantial completion had occurred, it only found that it was not impossible that it could be achieved. The claim is not barred by principles of issue preclusion, nor is it barred by the broader principle of claim preclusion.

Under the doctrine of claim preclusion or *res judicata,* a final judgment on the merits precludes the parties or those in privity with them from relitigating claims that were or could have been raised in the prior action. *Fay v. South Colonie Cent. School Dist.,* 802 F.2d 21, 28 (2d Cir.1986). *But see Don King Productions, Inc. v. Douglas,* 742 F.Supp. 741, 754 (S.D.N.Y.1990) (exceptions to finality requirement exist "where a ruling

---

2. The provision at issue in *Prime Management* stated that, "[i]f, on account of any breach or default by Lessee in Lessee's obligations under the terms and conditions of this lease, it shall become necessary or appropriate for Lessor to employ or consult with an attorney concerning or to enforce or defend any of Lessor's rights or remedies hereunder, Lessee agrees to pay any reasonable attorney's fees." *Id.*

is rendered 'practically' final owing to factors demonstrating 'that it was not avowedly tentative'") (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)).

 Under New York's "transactional approach," if claims in a later action arise out of the same "factual grouping" that formed the predicate for the prior proceeding, they are deemed part of the same "claim" and will be barred irrespective of whether they are based upon different legal theories or seek different relief. *See Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986). In this case, however, it is not simply that Tower is seeking different relief. In the Prior Litigation, Tower argued that the Lease had been breached because Associates could not substantially complete the project. In this case, Tower is disputing when the work was substantially completed, an issue which Tower argues was not ready for determination until May 1993, almost a year after judgment was entered in the first action.

The Court in the first litigation could not have determined the substantial completion date at a trial almost one year earlier thus rendering claim preclusion inapplicable. *See Prime Management Co., Inc. v. Steinegger*, 904 F.2d 811, 816 (2d Cir.1990) (claim preclusion does not extinguish claims not available to a party during a prior litigation). While it is conceivable that Tower could have asked for a declaratory judgment that substantial completion had not been achieved on January 30, 1992, they were not obligated to do so. Since they allege that the date will be fixed sometime in 1993 and they are not asking for reductions during a time that could have been litigated in the First Litigation, it is appropriate that they raise it in this later litigation. *See generally* 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 4409, at 74–75 (1981).

*Conclusion*

The motion for summary judgment by Tower to grant the relief of arbitration is granted as well as its motion to dismiss the counterclaim of Associates seeking attorneys' fees and costs. Associates' motions to dismiss the claim for rent reimbursement and

for summary judgment on their attorneys' fees are dismissed.

The parties will appear for a pretrial conference on September 26, 1995 at 4:00 P.M. in Courtroom 18–C.

It is so ordered.