Marshall P. SAFIR, Plaintiff,

v.

UNITED STATES LINES, INC., Lykes Bros. Steamship Co., Inc., Moore McCormack Lines, Inc., American President Lines, Inc., Farrell Lines, Inc., American Export Lines, Inc., Prudential Lines, Inc., Prudential-Grace Lines, Inc., Defendants.

No. 85 C 0864.

United States District Court, E.D. New York.

Aug. 23, 1985.

Marshall P. Safir, pro se.

Walter, Conston & Schurtman, P.C., New York City (William Schurtman, Gregory F. Hauser, New York City, of counsel), Foley, Hoag & Eliot, Boston, Mass. (Verne W. Vance, Jr., Boston, Mass., of counsel), for defendants Farrell Lines, Inc. and American Export Lines, Inc.

Kominers, Fort, Schlefer & Boyer, Washington, D.C. (T.S.L. Perlman, William H. Fort, Washington, D.C., of counsel), for defendants Lykes Bros. S.S. Co., Inc.

Haight, Gardner, Poor & Havens, Washington, D.C. (John W. McConnell, Jr., Washington, D.C., of counsel), for defendants U.S. Lines, Inc. and U.S. Lines (S.A.), Inc. (formerly Moore McCormack Lines, Inc.).

Haight, Gardner, Poor & Havens, New York City (Richard G. Ashworth, New York City, of counsel), for defendants Lykes Bros. S.S. Co., Inc., U.S. Lines, Inc. and U.S. Lines (S.A.), Inc. (formerly Moore McCormack Lines, Inc.).

Shea & Gardner, Washington, D.C. (Robert T. Basseches, William R. Hanlon, Washington, D.C., of counsel), Hill, Betts & Nash, New York City, for defendant American President Lines, Ltd.

David P. Howe, New York City, for defendants Prudential Lines, Inc. and Prudential-Grace Lines, Inc.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff's complaint alleges a private right of action implied from section 810 of the Merchant Marine Act, 46 U.S.C. § 1227, to recover a "restitutionary remedy in the form of disgorgement of the illegal earnings" of defendants. He seeks (a) $227,-686,369.33 in subsidies paid by the United States to defendant steamship companies during 1965 and 1966 when they were engaged in unlawful conduct, (b) interest, compounded quarterly, on that amount, and (c) over $2 billion in profits defendants allegedly earned from the use of the subsidies.

Defendants move to dismiss the complaint. They cite three grounds: (1) section 810 affords plaintiff no private right of action for "restitution"; (2) plaintiff lacks standing; and (3) this action, brought almost twenty years after the unlawful conduct occurred, is barred by the applicable statute of limitation. Defendant American President Lines, Ltd., which did not compete with Sapphire Lines, recites a further ground, namely, that the complaint does not allege a prior administrative or judicial determination of a statutory violation upon which a claim for restitution against the

non-competing shipping lines could be based. Defendants also move to enjoin plaintiff permanently from pursuing any further vexatious litigation relating to their pricing conduct in 1965 and 1966. Plaintiff cross-moves for summary judgment.

### I

The undisputed facts are as follows. Sapphire Steamship Lines, Inc. (Sapphire Lines) was an unsubsidized shipping corporation, in which plaintiff held fifty percent of the stock and for which he was a guarantor of many of its debts. Defendants are shipping lines that received government subsidies in 1965 and 1966. To defeat competition by Sapphire Lines on certain trade routes, defendants temporarily, in 1965 and 1966, lowered their rates for military cargo on those routes.

In 1966 Sapphire Lines sued defendants for treble damages under the antitrust laws, based upon defendants' pricing conduct. In 1967 Sapphire Lines was adjudicated a bankrupt, and later, in 1973, its trustee settled the treble damage suit with all defendants for $2.5 million.

Meanwhile, in 1967, the Federal Maritime Commission determined that defendants' conduct violated the Shipping Act of 1916, 46 U.S.C. § 814. Sapphire Lines, plaintiff, and the other shareholder then began an action in this court against Maritime Administration officials seeking an order declaring that section 810 of the Merchant Marine Act (the Act), 46 U.S.C. § 1227, barred subsidy payments to defendants and compelling those officials to recover all subsidies paid to defendants during 1965 and 1966. This court dismissed for failure to state a claim.

The Court of Appeals for the Second Circuit reversed and held that (a) plaintiffs had standing to bring the suit, (b) the Act authorized the Maritime Administrator to recover subsidies paid in the past to shipping lines while they were violating section 810, and, (c) while the Maritime Administrator had some discretion in determining whether to seek such recovery, he could not refuse to do so without considering the

interests of victims of the unlawful conduct. *Safir v. Gibson (Safir I)*, 417 F.2d 972 (2d Cir.1969), *cert. denied*, 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970).

After this decision the Maritime Commission directed its chief hearing examiner to compile a public record to provide a basis for determining whether defendants had violated section 810 of the Act and, if so, what action should be taken. This court then denied an injunction sought by plaintiff and his fellow litigants to restrain the Maritime Commission from paying any further subsidies to the shipping lines. The Court of Appeals affirmed insofar as the order refused to enjoin current subsidy payments, but directed the Maritime Administration not to redetermine that the conduct of the shipping lines in 1965 and 1966 violated section 810 of the Act to the injury of Sapphire Lines. *Safir v. Gibson (Safir II)*, 432 F.2d 137 (2d Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970).

Thereafter the Secretary of Commerce proceeded to recover from the defendants that had competed with Sapphire Lines about $1.1 million (representing only a part of their subsidies for 1965 and 1966), but declined to obtain refunds of subsidies from those defendants that had not so competed. This decision was ultimately sustained in *Safir v. Dole*, 718 F.2d 475 (D.C. Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984).

### II

The Court of Appeals for the Second Circuit has held that plaintiff had three available remedies in the late 1960's. He could have (1) brought an action for treble damages, (2) withheld some information from the government and brought a *qui tam* action under the False Claims Act, or (3) sued to compel officials of the Maritime Administration to recover subsidies paid to carriers that violated section 810. *Safir v. Blackwell*, 579 F.2d 742, 747 (2d Cir.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979). He now urges that he had and still has a further remedy, that is,

a claim under section 810 to recover personally those subsidies paid to defendants during 1965 and 1966 that the government chose not to recover.

Section 810 does not explicitly afford this private remedy, and the question is whether it is implicit. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) ).

Section 810 provides:

> It shall be unlawful for any contractor receiving an operating-differential subsidy ... to engage in any practice in concert with another carrier or carriers by water, which is unjustly discriminatory or unfair to any other citizen of the United States who operates a common carrier by water exclusively employing vessels registered under the laws of the United States.

46 U.S.C. § 1227. The section contains both a public remedy, that "[n]o payment or subsidy of any kind shall be paid directly or indirectly out of funds of the United States or any agency of the United States to any contractor or charterer who shall violate this section," and a private remedy, that "[a]ny person who shall be injured in his business or property by reason of anything forbidden by this section may sue therefor ... and shall recover threefold the damages by him sustained."

██ Where a statute expressly provides for particular remedies, the court is slow to read in others. *TAMA,* 444 U.S. at 19, 100 S.Ct. at 246. The court, unless it finds in the legislative history clear indications of a contrary congressional purpose, will conclude "that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). The history of the Act shows no purpose to grant private litigants any right to claim

money beyond the treble damages expressly provided.

During the Senate debate Senator O'Mahoney discussed a subsidized American carrier that took part in putting an unsubsidized American carrier out of business. The injured carrier said that withdrawing the subsidy from the line engaging in anticompetitive conduct would enable it to compete. 80 Cong.Rec. 9921 (1936). The Senator then introduced an amendment, enacted as section 810, to make clear Congress' intention not to pay subsidies to lines that acted to crush American competition. He said further that:

> In order to give an opportunity to those who may be injured by illegal combinations of the kind I have described to protect themselves I have incorporated in this amendment the principle of section 4 of the Clayton Act which permits the victim of such unfair practices to sue for treble damages.

80 Cong.Rec. 10075–76 (1936).

Thus Congress focused on the matter of remedying victims and permitted them to bring suits for treble damages, while requiring the government to withhold current subsidies (thereby improving the competitive position of the victims). It is fair to assume that had Congress intended to allow private litigants to recover past subsidies Congress would have said so.

Although section 810 does not expressly authorize recovery by the Maritime Administration of subsidies paid in the past, the Court of Appeals for the Second Circuit allowed this remedy on the theory that the subsidy contracts authorized it. The court deemed this result consistent with the purposes of the Act and noted that "few complaints of violations will be received and acted on until after some further payments have already been made." *Safir I,* 417 F.2d at 977.

But this expansion of the public remedy does not suggest that there should be an expansion of the private remedies. Neither plaintiff nor Sapphire Lines was a party to the subsidy contracts upon which the Maritime Administrator's right to recover past

subsidies was based. The remedy for treble damages presumably affords private litigants at least total relief. Moreover, to imply a private right to recover past subsidies would impair the purposes of the Act.

■ The policy of the Act is to foster development of the American merchant marine, 46 U.S.C. § 1101, by providing a new method of subsidizing American-flag ships to enable them to compete with foreign-flag lines. *See Safir I,* 417 F.2d at 976; 46 U.S.C. §§ 1101, 1119, 1151, 1171. The maritime officials must withhold current subsidies and may recover past subsidies when those subsidies are being or have been used to hurt rather than help competition. *Safir I,* 417 F.2d at 976. But the power to recover subsidies is expressly granted only to those officials. So that they can build up the merchant marine and aid the competitive position of victims of unlawful conduct, the maritime officials may recover all, some, or none of the subsidies paid in the past to carriers while violating section 810 and may resume subsidizing carriers that have returned "to the path of virtue." *See id.* at 977–78; *Safir II,* 432 F.2d at 145 n. 2.

■ Private litigants need not consider the public interest. They may be expected to pursue their own advantage and to be, at best, indifferent to whether recovery of past subsidies would hinder the growth of the merchant marine. To permit plaintiff, who has been out of the shipping business for over fifteen years and allegedly has no intention of returning to it, to collect in excess of $3 billion (including interest and profits) from eight American-flag carriers actively engaged in international shipping would hardly foster the merchant marine. *Cf. Safir I,* 417 F.2d at 977.

Defendants' motion to dismiss is granted. The court need not consider the other grounds for dismissal.

### III

The first action arising from defendants' pricing practices during 1965 and 1966 was filed in August 1966. This is the eleventh action concerning those practices. Defend-

ants would like to be free from further law suits on the subject.

■ Under the All Writs Statute, 28 U.S.C. § 1651(a), the court may enjoin vexatious litigation. *See Matter of Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir. 1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983). The court is satisfied that the time has come to grant relief to defendants. *See In re Martin-Trigona,* 737 F.2d 1254 (2d Cir.1984).

Not all of the suits against the defendants have been unsuccessful. The antitrust action for treble damages resulted in a $2.5 million settlement with the bankruptcy trustee of Sapphire Lines. Moreover, plaintiff succeeded in his suit to compel the Maritime Administration to recover subsidies paid to some defendants. But the courts have rejected most of his claims.

Plaintiff did not persuade the courts that section 810 required the maritime officials to recover all subsidies paid to carriers during the period of violation or any subsidies paid to non-competing carriers. He did not prevail in his contentions that the shipping lines were barred perpetually from receiving subsidies even after their unlawful conduct ceased or that disgorging all past subsidies was a prerequisite to receipt of further subsidies. He failed to persuade the courts that he was entitled to pursue a claim under the False Claims Act, that he had standing to appeal the Secretary of Commerce's decision on the amount of subsidies properly recovered, that he may share in the government's recovery of subsidies on a "common fund" theory, or that he has a private right of action to recover defendants' profits or the subsidies paid to them. *See generally Safir v. Blackwell,* 579 F.2d 742; *Safir v. Kreps,* 551 F.2d 447 (D.C.Cir.), *cert. denied,* 434 U.S. 820, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977); *Safir II,* 432 F.2d 137; *Safir I,* 417 F.2d 972; *Safir v. Klutznick,* 526 F.Supp. 921 (D.D.C.1981), *vacated sub nom. Safir v. Dole,* 718 F.2d 475 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984). He has continued to

reassert many of these claims after their rejection.

Plaintiff has sought collateral relief *pendente lite* in most of his actions, including this one. Frequently he has alleged that defendants were dissipating their assets to prevent him from satisfying potential multi-million dollar judgments. Accordingly he has moved to enjoin the sale of ships, stocks and other assets. He has sought to have the proceeds of sales and other funds placed in escrow, to enjoin a stockholders' meeting, and to enjoin the government from paying subsidies and from approving a sale of stock in which neither the buyer nor seller was a defendant in plaintiff's actions. *See* Defendants' Motion for Permanent Injunctive Relief, Exhibits 1–22.

Defendants point out that a bankruptcy court denied plaintiff's motion to enjoin the sale of stocks from one defendant to another and enjoined him from pursuing the application. He applied to the district court and court of appeals to stay the sale. Both applications were denied. *See* Exhibits 5–8. Another court denied his motion to enjoin a defendant from completing transactions with the Secretary of Commerce by stating: "However valid Mr. Safir's suit may be, . . . he may not use it to indiscriminately flail his opponents. This would not assist Mr. Safir and would only harm the maritime industry and the thousands of Americans dependent on the industry's operations." *Safir v. Klutznick*, 526 F.Supp. at 941. The courts have denied every one of these motions, which number over a dozen. But these failures have not deterred plaintiff from filing further motions seeking similar and sometimes identical ends.

Some of plaintiff's applications seem a bit eccentric. He moved to dismiss an appeal, alleging that defendants and the maritime officials had engaged in a corrupt scheme to bribe President Nixon to defeat plaintiff's litigation. *See* Exhibit 34. He also moved to have Judge MacKinnon of the District of Columbia circuit court recuse himself because the judge was allegedly President Nixon's friend. *See* Exhibit

36. Both motions were denied. *See* Exhibits 36 and 37.

He sought to discover "Nixon tapes" and related documents on the theory that officials in the Nixon administration conspired with defendants to prevent him from vindicating his rights. Despite this court's finding that these materials were not "germane," *see* Exhibit 29 at 14, plaintiff filed several discovery motions and a subpoena on the Chief Archivist of the United States. All these attempts failed. *See* Exhibits 29–32. Along with his meritless motion in this action to enjoin a sale of a ship plaintiff served an oppressive subpoena which the court quashed. *See Safir v. United States Lines, Inc.*, No. 85 C 0864 (E.D.N.Y. June 6, 1985).

In 1983 plaintiff filed petitions in the bankruptcy court to force four of the defendants into involuntary bankruptcy. Exhibit 26. Apparently his theory was that he was a creditor of defendants, since he was about to win from them enormous judgments which they would be unable to satisfy. Judge Whelan rejected plaintiff's claims on several grounds and said:

> [Mr. Safire's various other litigation] does not give [him] the right to use the bankruptcy court as a forum to tie up legitimate ongoing businesses that anyway do not qualify for an involuntary petition in bankruptcy.
>
> The abuse of the bankruptcy process I think is clear.

Exhibit 28 at 24. The court dismissed each action and awarded costs and attorneys' fees to the debtor companies. Exhibits 27 and 28. Plaintiff, who insists he is penniless and unemployed, *see* Exhibit 33, has not paid these judgments.

Defendants fear that plaintiff's lack of success in this action will not deter him from continuing to harass them with further actions, motions and petitions allegedly based on their conduct in 1965 and 1966. Unfavorable decisions have not deterred him in the past. For example, the Secretary of Commerce found that the lines that did not compete with Sapphire Lines violated section 810 only "technically" and

were not required to refund any subsidies. Those companies nonetheless sought to set aside the decision "only to guard against the risk that Safir might induce the courts to attach some consequences to the otherwise innocuous determination of technical violation." *Safir v. Dole,* 718 F.2d at 484. The court held that since plaintiff lacked power to do so, the risk that he would try to attach legal consequences to the finding of a technical violation was "non-existent." *Id.* Yet, that is the very finding upon which plaintiff bases his complaint against the four non-competing carriers in this action. *See* Complaint at ¶¶ 1 and 2.

There seems to be little prospect that the dismissal of this action will mark the termination of plaintiff's 19-year campaign. He has boasted that his sole occupation is being "the world's foremost litigator." Exhibit 33 at 9.

█ Unless plaintiff is precluded from bringing further actions, he will likely continue to make meritless claims arising from defendants' conduct almost twenty years ago. Litigious affinity alone does not support the grant of an injunction. But the court may issue an injunction when it becomes clear that "the courts are being used as a vehicle of harassment by a 'knowledgeable and articulate experienced pro se litigant' who asserts the same claims repeatedly in slightly altered guise." *Kane v. City of New York,* 468 F.Supp. 586 (S.D. N.Y.), *aff'd,* 614 F.2d 1288 (2d Cir.1979). *See also Castro v. United States,* 584 F.Supp. 252 (D.P.R.1984).

Plaintiff's record of resort to legal processes without serious regard for the merits of his claims, and in particular his propensity to make motions for relief *pendente lite* and to file bankruptcy petitions, suggest that his motive is largely to harass defendants. They say that their resources have been drained since they are unable to collect judgments against him for costs and attorneys' fees. Moreover, some defendants claim their credit ratings have been damaged by the involuntary bankruptcy proceedings. If plaintiff's objective is not success on the merits but hope of a settle-ment, such a benefit is "not even the sort that a decent system of law should tolerate." *Safir v. Dole,* 718 F.2d at 480.

█ The assessment of costs and attorneys' fees against plaintiff would apparently be futile. The rejection of his claims and chastisement by courts have not deterred him. The court will therefore issue an injunction to protect the defendants and the courts from further meritless litigation. *See In re Martin-Trigona,* 737 F.2d at 1262.

The court enjoins plaintiff permanently from (1) proceeding further in this action except to (a) seek appellate review by the court of appeals, (b) apply for *certiorari* to the Supreme Court, and (c) submit papers responding to applications, if any, by defendants and (2) instituting in any federal court, including bankruptcy courts, any new action, motion, petition or proceeding arising from or related to defendants' pricing practices in 1965 and 1966 or their then receipt of merchant marine subsidies.

## IV

Defendant Farrell Lines, Inc. moved for attorneys' fees in connection with plaintiff's motion for relief *pendente lite.* The court, since it issues an injunction based in part on defendants' representations that plaintiff is "immune" from paying court costs, declines to award such fees. Should the Court of Appeals reverse the injunctive order, defendant may renew its request.

## V

The court grants defendants' motions for an order dismissing the complaint and issuing a permanent injunction, denies plaintiff's motion for summary judgment, and denies the motion for attorneys' fees. So ordered.