Opinion PER CURIAM.
 

 PER CURIAM:
 

 Although these two closely-related cases have not been formally consolidated, we deal with them in one opinion, in the fervent hope they represent the final episode in a twenty-year saga involving the self-proclaimed “world’s foremost litigator.”
 
 Safir v. United States Lines,
 
 616 F.Supp. 613, 619 (E.D.N.Y.1985),
 
 aff'd and modified,
 
 792 F.2d 19 (2d Cir.1986). Safir, acting
 
 pro se,
 
 has brought a variety of actions against various subsidized shipping companies collectively known as the Atlantic and Gulf American Flag Berth Operators (“AGAFBO”), seeking to redress injuries inflicted upon him by predatory pricing behavior against his company. The tortuous history of this litigation need not be repeated here.
 
 See, e.g., Safir v. United States Lines,
 
 792 F.2d at 20-22;
 
 Safir v. Kreps,
 
 551 F.2d 447, 449-50 (D.C.Cir.),
 
 cert. denied,
 
 434 U.S. 820, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977);
 
 Safir v. Gibson,
 
 417 F.2d 972, 974-75 (2d Cir.1969),
 
 cert. denied,
 
 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970). Although he has enjoyed an occasional success, the vast majority of Safir’s claims arising out of the events of 1965-66 have been repeatedly rejected by the courts.
 
 Safir v. United States Lines,
 
 792 F.2d at 24. These appeals arise from two District Courts’ affirmances of separate Bankruptcy Courts’ dismissals, with awards of attorneys’ fees, of involuntary bankruptcy petitions filed by Safir against American President Lines, Ltd. (“APL”) and Farrell Lines, Inc. (“Farrell”).
 

 Safir’s theory in opening a new front in his decades-old battle against the shipping companies is that because these companies may be found liable to him for “gargantuan” sums in related litigation, he must take steps to protect his rights as a potential creditor before they fraudulently dissipate their assets. Prior to involving his targets in involuntary bankruptcy proceedings, Safir has, without success, requested from the courts similar
 
 pendente lite
 
 relief, seeking to enjoin the sale of ships, stock, and other assets. He has also sought to have the proceeds of such sales placed in escrow, to enjoin a stockholders’ meeting and to enjoin the government from paying subsidies and from approving a sale of one company’s stock.
 
 Id.
 

 At the heart of Safir’s bankruptcy action is his claim that a multi-million dollar judgment in his favor is imminent. Therein, however, lies the rub. No such windfall has even been hinted at by any court; Sa-fir’s reliance on language in an opinion of this court holding that he had standing to bring an action to compel the United States Government to recover subsidies paid to members of AGAFBO, because as a potential competitor of AGAFBO Safir would “profit” from the government’s recovery of subsidy payments,
 
 see Safir v. Kreps,
 
 551 F.2d at 451, offers no sustenance for his belief that money is due him. The court clearly stated that the benefit to Safir would come to him, if at all, as a competitor of those shipping lines forced to return large sums of money to the government. Nothing in that standing opinion suggested that Safir was personally entitled to any money beyond what he had already recovered in earlier litigation. Moreover, six years later another panel of this court ruled that there was no longer any genuine likelihood Safir would reenter the shipping business and become a competitor of AGAFBO and thus he had no standing in the subsidy recovery litigation.
 
 Safir v. Dole,
 
 718 F.2d 475, 480-81 (D.C.Cir.1983). The court was “confident in saying that at least it is not likely this money, if recovered by the government, will find its way into plaintiff’s hands.”
 
 Id.
 
 at 480.
 

 Even prior to this court’s decision in
 
 Sa-fir v. Dole,
 
 and more so in light of it, Safir
 
 *1309
 
 has been unable to persuade a court that he is the holder of a cognizable claim against APL or Farrell.
 
 [1]
 
 His allegations in the bankruptcy forum take on an even more disturbing tone when we note that neither APL nor Farrell was ever found liable, even to the government, for any subsidy refunds. The Maritime Administration and the Secretary of Commerce concluded that APL and Farrell were merely “technical violators” of § 810 of the Merchant Marine Act, as they had never been in direct competition with Safir,
 
 see Investigation of Alleged Section 810 Violations,
 
 13 Shipping Reg.Rep. (P & F) 809 (Maritime Subsidy Bd.1973);
 
 Safir v. Dole,
 
 718 F.2d at 478, 483.
 

 Safir’s propensity to relitigate the same issues over and over is without parallel. In attempting to drag appellees into bankruptcy court to block business transactions he has been unable to reach in other forums, he has abused the powerful legal weapon that an involuntary petition offers bona fide creditors. Section 303(b) of the Bankruptcy Code explicitly and clearly prescribes the requirements for commencing an involuntary case under Chapter 7: it is initiated by the filing of a petition “by three or more entities, each of which is either a
 
 holder of a claim against such •person that is not contingent as to liability or the subject off] a bona fide dispute,
 
 or an indenture trustee representing such a holder.” 11 U.S.C. § 303(b)(1) (emphasis added). Whatever Safir’s own view of his prospect for eventual success in litigation seeking money from the shipping companies, he can hardly contend that his claim is neither contingent nor the subject of a bona fide dispute. However misguided his initial venture into bankruptcy court, his subsequent appeals can only be viewed as irresponsible.
 

 We agree with the District Court’s characterization of the action against Farrell as frivolous. We further agree with the Bankruptcy Court’s finding that the petition was not filed in good faith. We hereby affirm the District Court and the Bankruptcy Court in No. 85-6049 in their dismissal of Safir's petition on the grounds that he is not a creditor of Farrell under § 303(b) of the Bankruptcy Code.
 
 [2]
 
 We also find Safir’s appeal in No. 84-5228 to be wholly without merit,
 
 [3]
 
 and affirm the courts below in their dismissal of Safir’s petition against APL on similar grounds, and for Safir’s failure to comply with the Bankruptcy Rules.
 
 [4]
 

 
 *1310
 
 Federal Rule of Appellate Procedure 38, and 28 U.S.C. § 191? both authorize appellate courts to impose sanctions on appellants and their counsel for filing frivolous appeals.
 
 See Holmes v. District of Columbia,
 
 801 F.2d 1371 (D.C.Cir.1986);
 
 Mathes v. Commissioner,
 
 788 F.2d 33, 35 (D.C.Cir.1986). In consequence we grant, in part, appellee Farrell’s motion for double costs and reasonable attorneys’ fees, in the amount of $500 against Safir on this appeal.
 
 [5]
 
 With respect to No. 84-5228, we abstain from assessing monetary sanctions at this time because APL has expressly declined to request them.
 

 We are aware of the fact that Safir has failed to pay other such judgments for costs,
 
 [6]
 
 and that monetary sanctions alone may be insufficient to put an end to his vexatious litigation. The District Court has suggested that we take action to prevent future recurrences of this kind, along the lines of an injunction granted by a New York district court. We believe, however, that relief of the sort awarded in
 
 Safir v. United States Lines,
 
 616 F.Supp. 619 (E.D.N.Y.1985), aff
 
 'd and modified,
 
 792 F.2d 19 (2d Cir.1986), comes more appropriately following a hearing on the proper contours of such an injunction. We sincerely hope Sa-fir will heed our warning to bring this harassment of appellees and abuse of this court’s processes to an end, but in the event he does not, we respectfully remind the District Court of its authority under 28 U.S.C. § 1651(a) to enjoin further abuse of the judicial process.
 

 [1]
 

 . Safir's most recent attempts to collect money from APL, Farrell and other shipping lines, alleging an implied right of action for restitution under § 810 of the Merchant Marine Act of 1936, 46 U.S.C. § 1227, were rejected, and resulted in an injunction being issued against him.
 
 Safir v. United States Lines,
 
 616 F.Supp. 613 (E.D.N.Y.1985),
 
 aff’d and modified,
 
 792 F.2d 19 (2d Cir.1986).
 

 [2]
 

 . Safir’s petition was. also deficient in that it failed to comply with the three-creditor requirement of 11 U.S.C. § 303. The Bankruptcy Court denied him the opportunity to solicit other creditors after the filing of the petition because it ruled that as a matter of law, Safir was not a creditor. Moreover, even under the "good faith” exception that some courts have recognized to the three-creditor requirement,
 
 ie.,
 
 a creditor who acted under the good faith but mistaken belief that the debtor had fewer than twelve creditors may amend the petition and join two more creditors,
 
 see, e.g., In re Alta Title,
 
 55 B.R. 133 (Bankr.D.Utah 1985), Safir must fail. Any reasonable person would have presumed that a shipping company like Farrell would have more than twelve creditors.
 

 [3]
 

 . This court reserved for itself the prerogative of determining whether Safir’s appeal was friv-' olous and whether it merited sanctions under Federal Rule of Appellate Procedure 38.
 
 See In re American President Lines, Inc.,
 
 779 F.2d 714, 717 (D.C.Cir.1985). Safir’s representations to the contrary notwithstanding,
 
 see
 
 Application for Extension of Time in Which to File Petition for Certiorari,
 
 Safir v. United States Lines, Inc.,
 
 792 F.2d 19 (2d Cir.1986), this court never indicated or implied that such claims were "serious and substantive (non-frivolous).’’
 

 [4]
 

 . The District Court dismissed with prejudice Safir’s appeal citing his noncompliance with the requirements of Bankruptcy Rule 8006, which requires the timely service of a designation of items to be included in the record and a statement of the issues to be presented on appeal. Bankruptcy Rule 8001(a) authorizes dismissal of an appeal for noncompliance with Bankruptcy Rule 8006.
 

 Safir’s petition against APL was deficient for failing to comply with the three-creditor requirement as well.
 
 See
 
 note 2,
 
 supra.
 

 [5]
 

 . While we know that $500 does not likely cover the appellee’s attorneys’ fees and costs, that sum is recoverable through forfeiture of the bond Safir was required to post on appeal. His allegedly indigent status together with the likelihood that a grant of full attorneys’ fees would involve this court in another round of litigation about the precise amount of such fees make it seem more sensible to limit the fees to the bond amount.
 

 [6]
 

 . In addition to the petitions against Farrell and APL, Safir filed two other involuntary bankruptcy petitions against other shipping companies. Both were dismissed and attorneys’ fees were awarded to defendants.
 
 See
 
 In re Lykes Bros. Steamship Co., No. 83-289 (Bankr.D.D.C. Dec. 7, 1983) (awarding $23,686.77); In re Moore McCormack Lines, Inc., No. 83-290 (Bankr.D.D.C. Dec. 7, 1983) (awarding $25,888.75). Safir, insisting he is penniless and unemployed, has not paid these judgments.
 
 Safir v. U.S. Lines,
 
 616 F.Supp. at 618.