**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DONALD G. CROMER,
          *Plaintiff-Appellant,*

v.

KRAFT FOODS NORTH AMERICA,
INCORPORATED,
          *Defendant-Appellee.*

GEORGETOWN UNIVERSITY LAW
CENTER, Appellate Litigation
Program,
          *Amicus Supporting Appellant.*

No. 02-1646

DONALD G. CROMER,
          *Plaintiff-Appellant,*

v.

KRAFT FOODS, INCORPORATED,
          *Defendant-Appellee.*

GEORGETOWN UNIVERSITY LAW
CENTER, Appellate Litigation
Program,
          *Amicus Supporting Appellant.*

No. 02-1795

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Carl Horn, III, Magistrate Judge.
(CA-97-594-H)

Argued: September 28, 2004

Decided: December 8, 2004

Before MICHAEL and MOTZ, Circuit Judges, and
Henry E. HUDSON, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Michael and Judge Hudson joined.

---

**COUNSEL**

**ARGUED:** Alistair Elizabeth Newbern, GEORGETOWN UNIVER-SITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Amicus Supporting Appellant. Donald G. Cromer, Green-ville, South Carolina, Appellant Pro Se. Christy E. Phanthavong, BRYAN CAVE, L.L.P., Chicago, Illinois, for Appellee. **ON BRIEF:** Steven H. Goldblatt, Director, Matthew B. Archer-Beck, Varu Chilakamarri, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Amicus Supporting Appellant. Timothy C. Klenk, BRYAN CAVE, L.L.P., Chicago, Illinois; Joel H. Spitz, MCGUIREWOODS, L.L.P., Chicago, Illinois, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Donald G. Cromer appeals the district court's denial of his Rule 60(b) motion, as well as an order imposing upon him a prefiling injunction and finding him in criminal and civil contempt. We affirm the Rule 60(b) ruling, but vacate the prefiling injunction and contempt

findings, and remand for further proceedings consistent with this opinion.

## I.

After Cromer filed an employment discrimination action against his then-employer, Kraft Foods, Inc., the parties agreed to proceed before a United States magistrate judge and further agreed that the matter was "appropriate for mediation." On October 5, 1999, following mediation at which each side was represented by counsel, the parties entered into a settlement agreement.

Two days later, Cromer filed a "motion to dismiss" that agreement.[1] In a December 10, 1999 order, the magistrate judge denied Cromer's motion and ordered the parties to comply with the settlement agreement. Cromer appealed this order.

While his appeal was pending, Cromer filed a "motion for relief from judgment . . . entered 12/10/99." On February 22, 2000, the magistrate judge denied this motion, calling it "largely incomprehensible," and ordered Cromer to "CEASE FILING MOTIONS OR OTHER DOCUMENTS IN THIS CASE in this Court." The judge also warned Cromer that "further filing of motions or documents in this case, after being directed *to cease* filing . . . may subject [you] to financial or other sanctions." In spite of this warning, Cromer filed a Rule 60(b) motion contesting the magistrate's December 10, 1999 and February 22, 2000 orders. On May 2, 2000, the magistrate judge denied the Rule 60(b) motion and again cautioned Cromer that "the filing of frivolous motions in this court may result in the imposition of monetary and/or other sanctions." Cromer promptly noted an appeal of that order. On August 2, 2000, after consolidating this appeal with his earlier appeal, we affirmed in both cases. *Cromer v.*

---

[1]Like all of his motions filed after October 5, 1999, Cromer filed this motion *pro se*. On October 12, 1999, shortly after Cromer filed his first "motion to dismiss" the mediation agreement, counsel who had represented Cromer at the mediation moved to withdraw as counsel; on February 29, 2000, after having initially denied it, the magistrate judge granted the withdrawal motion.

*Kraft Foods, Inc.*, 225 F.3d 653 (table), 2000 WL 1059083 (4th Cir. 2000) (per curiam) (unpublished).

On February 28, 2001, the magistrate judge denied a set of motions that Cromer had filed over a year before. The magistrate judge explained that he had "overlooked" these motions, and for this reason, failed to rule on them, but that they were "no more meritorious than previous ones in this matter." The magistrate judge denied Cromer's motion to reconsider this ruling; Cromer appealed, and on October 1, 2001, we affirmed. *Cromer v. Kraft Foods, Inc.*, 19 Fed. Appx. 147, 2001 WL 1159610 (4th Cir. 2001) (per curiam) (unpublished).

On March 25, 2002, Cromer filed a "motion for relief from judgment entered 12/10/99 pursuant to Rule 60(b)(4) and (6)." On April 25, 2002, the magistrate judge denied this motion, warning Cromer that "the filing of any further frivolous motions will result in the imposition of SANCTIONS." Four days later, on April 29, 2002, Cromer filed a motion for reconsideration of the April 25 order, as well as motions for change of venue, disqualification of the magistrate judge, and clarification of the April 25 order.

On May 22, 2002, the magistrate judge denied these motions and ordered Cromer to appear on June 20, 2002 to show cause why he should not be held in contempt. The judge warned Cromer that he should "be prepared to pay a civil sanction or criminal fine up to $5,000," and, that if found guilty of criminal contempt, he could be incarcerated for up to 30 days.

Cromer appeared as directed before the magistrate judge. Cromer protested his good faith and emphasized his status as a *pro se* litigant. He told the magistrate judge that, at some point after having been warned by the judge not to file additional motions, he asked a clerk of this court if he could file an additional motion in the district court and was informed that, unless enjoined from doing so, he could. Although the magistrate judge apparently gave some credence to this account, the judge nonetheless found Cromer in contempt for his "knowing and continued disobedience."

The magistrate judge then imposed: (1) "criminal sanctions" in the form of "incarceration for the remainder of the day of the hearing"

(which amounted to approximately 90 minutes imprisonment), a fine of $1,500, and a special assessment of $10; (2) a "civil sanction" in the form of $1,500 for defendant's attorneys' fees; and (3) a prefiling injunction enjoining Cromer from making "*any and all* filings in this case" and "any filing in any other, unrelated case [in the United States District Court for the Western District of North Carolina] unless he first . . . obtain[ed] permission to so file" from the magistrate judge.

Cromer timely appealed this order, as well as the orders denying his Rule 60(b) motion.[2] We consolidated these cases for consideration on appeal.

## II.

We first address the magistrate judge's denial of Cromer's Rule 60(b) motion. Rule 60(b) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void . . . or; (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Cromer sought relief under both subsections (b)(4) and (b)(6).

A judgment is not "void" under Rule 60(b)(4) merely because it is erroneous. "It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Schwartz v. United States*, 976 F.2d 213, 217 (4th Cir. 1992) (internal quotation marks and citation omitted). Cromer does not proffer in his motion anything that would entitle him to relief under that standard. Similarly, Cromer does not offer "any other reason" in his motion that merits relief under Rule 60(b)(6) or warrants reopening a settlement agreement that he entered into, with the aid of counsel, more than five years ago.

Rather, in his motion, Cromer simply argues once again that the magistrate judge incorrectly enforced the settlement agreement. This

---

[2]Cromer also timely appealed the denial of his April 29, 2002 motions for change of venue, disqualification of the magistrate judge, and clarification of the April 25 order; since he has failed to present any argument on those issues on appeal, however, we do not consider them.

provides no basis for Rule 60(b) relief. Accordingly, we affirm the order denying Cromer's Rule 60(b) motion.

## III.

The imposition of the prefiling injunction, which we review for abuse of discretion, *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990), presents more difficult questions. Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like Cromer. *E.g.*, *In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989); *see also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4405, at 117-18 (2d ed. 2002) ("Basic power to protect the preclusive effects of a federal judgment by injunction may well inhere in the very existence of federal courts. If a more definite grant of general authority is needed, it can be found in the All Writs Act.").

Such a drastic remedy must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts. U.S. Const. amend. XIV, § 1. These rights are longstanding and of fundamental importance in our legal system. "The due process clause requires that every man shall have the protection of his day in court." *Truax v. Corrigan*, 257 U.S. 312, 332 (1921). And, the Supreme Court has explained that the particular constitutional protection afforded by access to the courts is "the right conservative of all other rights, and lies at the foundation of orderly government." *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907).

Thus, a judge should not in any way limit a litigant's access to the courts absent "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). Indeed, "use of such measures against a *pro se* plaintiff should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts." *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980).

In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including

(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *See, e.g.*, *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Green v. Warden, United States Penitentiary*, 699 F.2d 364, 368-69, 370 n.8 (7th Cir. 1983); *Pavilonis*, 626 F.3d at 1078-79.

In this case, the magistrate judge did not enumerate or discuss these factors. But the judge appears to have considered some of them. He seems to have concluded that the first and third factors weighed against Cromer, finding Cromer's filings "frivolous," "tiresome," "wasteful of the court's time," and "wasteful of the defendant's resources." Conversely, the magistrate judge suggested that the second factor might weigh in Cromer's favor, noting that given Cromer's conversation with a clerk of this court, Cromer might have had a good faith basis for at least some of his filings. But it does not appear that the judge considered the important fourth factor — the adequacy of alternative sanctions. This omission gains particular significance here, because it may well be that in this case, a finding of contempt would have sufficed to deter Cromer from making future filings.

Moreover, even if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a prefiling injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue. *Brow*, 994 F.2d at 1038; *De Long*, 912 F.2d at 1148; *Procup v. Strickland*, 792 F.2d 1069, 1070, 1074 (11th Cir. 1986) (en banc); *Safir*, 792 F.2d at 25; *Castro v. United States*, 775 F.2d 399, 410 (1st Cir. 1985). Absent this narrowing, a prefiling injunction, like any other injunction, will not survive appellate review. *See, e.g.*, *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001).

For example, in *Safir*, the district court imposed a prefiling injunction against a litigant who had, over the course of approximately twenty years, filed eleven federal court actions against the same defendants for pricing practices engaged in during 1965 and 1966. *Safir v. United States Lines, Inc.*, 616 F. Supp. 613, 617 (E.D.N.Y.

1985). The Second Circuit agreed that the litigant's conduct warranted a prefiling injunction. *Safir*, 792 F.2d at 25. But because the injunction prohibited the litigant from making further filings in that litigation (other than to seek appellate review) and "from instituting any action whatsoever" in any related litigation, the appellate court concluded that the challenged injunction could not stand. *Id.* The injunction had to be narrowed to allow the litigant the option of filing additional federal court actions, if granted permission to do so by the district court. *Id.*

The prefiling injunction in the case at hand is even broader than the one at issue in *Safir*. It not only enjoins Cromer from making "*any and all* filings" in the present case; it also enjoins him from making any future filings in any *unrelated* case in the United States District Court for the Western District of North Carolina, without first obtaining permission from the magistrate judge who issued the injunction.

This injunction is not "narrowly tailored to fit the particular circumstances of the case." *Brow*, 994 F.2d at 1038. Although Cromer has certainly proved himself to be a "frequent filer" with respect to his employment discrimination suit and resulting settlement agreement, nothing in the record justified infringing upon his right to bring suit in *unrelated* cases. Indeed, all of Cromer's filings in the Western District of North Carolina appear to have concerned his single case against Kraft; the magistrate judge apparently believed a prefiling injunction to be necessary because of Cromer's "knowing and continued disobedience" of the orders in that case. A narrowly tailored injunction, therefore, would address only filings in that or related actions. Prohibiting Cromer from making any filings in any unrelated suit does not address the problem at issue, and is therefore an overbroad restriction.[3]

The first portion of the injunction, prohibiting Cromer from further making "*any and all* filings in this case," presents a closer question.

---

[3]Although the parties did not address the issue and we see no need to decide it, we have doubts as to whether a magistrate judge has authority to control the docket of the district court in the manner done here. *See* 28 U.S.C.A. § 636(c) (West 1993 & Supp. 2004) (providing powers of United States magistrate judges).

We sympathize with the magistrate judge, who repeatedly warned Cromer to cease further filings. Nevertheless, imposing a categorical ban on future filings in this case leaves no room for potentially meritorious filings, even ones so regarded by a district court. Accordingly, the magistrate judge should consider on remand whether this portion of the injunction should be narrowed.

We also note that before a judge issues a prefiling injunction under 28 U.S.C. § 1651(a), even a narrowly tailored one, he must afford a litigant notice and an opportunity to be heard. *See*, *e.g.*, *Brow*, 994 F.2d at 1038; *De Long*, 912 F.2d at 1147; *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988); *In re Oliver*, 682 F.2d 443, 444, 446 (3d Cir. 1982); *In re Hartford Textile Corp.*, 613 F.2d 388, 390 (2d Cir. 1979). It is not at all clear that the magistrate judge provided Cromer notice of a possible prefiling injunction sufficient to "ensure" that Cromer had "the opportunity to oppose the court's order before it [wa]s instituted." *Brow*, 994 F.2d at 1038.

Unquestionably, the judge repeatedly cautioned Cromer that continued filing would result in the imposition of "sanctions." Moreover, in the May 22, 2002 Order to Show Cause, the magistrate directed Cromer "to appear . . . to show cause why he should not be held in contempt," and warned him "to be prepared to pay a civil sanction or criminal fine up to $5,000" and that he might be incarcerated. Thus, the magistrate certainly provided Cromer with notice that he faced civil and criminal contempt sanctions. However, the judge never indicated that he might impose a prefiling injunction. Indeed, as the judge told Cromer at the beginning of the June 20, 2002 contempt proceeding, "The purpose of the hearing today is to give you an opportunity to argue or to put on evidence to show why you should not be held in contempt of this court." As a general matter, notice of a possible finding of contempt will rarely provide adequate notice of a prefiling injunction. A finding of contempt and a prefiling injunction constitute distinct sanctions, inviting distinct defenses. Thus, an opportunity to be heard on one will not satisfy the due process right to be heard on the other. On remand, Cromer will of course have notice of the possible issuance of a prefiling injunction and he will have an opportunity to be heard prior to the issuance of any injunction.

We recognize that judicial resources are in scarce supply. Meritorious claims often take years to wend their way through our court sys-

tem, in part because the judicial system is so overburdened. Undoubtedly, the conduct of Cromer, and litigants like him, would frustrate even the most patient. But a judge may restrict a right as fundamental as access to our courts only in limited circumstances and in strict accordance with established protections. That was not done here.

## IV.

Finally, we turn to the question of whether the magistrate judge properly imposed criminal and civil contempt sanctions. Cromer's assertedly contumacious behavior occurred outside of court and therefore triggers the procedural protections afforded in proceedings for so-called "indirect" contempt; "direct" contempt, which occurs in the court's presence, may be punished summarily, and is thus not subject to the same protections. *See*, *e.g.*, *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 n.2 (1994); *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996). Our analysis in this case applies only to situations involving "indirect" contempt.

## A.

The Supreme Court has held that "[c]riminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968), and that "criminal [contempt] penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt." *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). For example, a person cannot be convicted of criminal contempt without being informed of his right to counsel, *United States v. Johnson*, 659 F.2d 415, 416-17 (4th Cir. 1981); *Richmond Black Police Officers Assoc. v. Richmond*, 548 F.2d 123, 128 (4th Cir. 1977), and it is plain error for a judge to act as both prosecutor and decision maker in a criminal contempt proceeding. *See Neal*, 101 F.3d at 995-99 (reversing criminal contempt conviction because the district judge "improperly assumed a prosecutorial role").[4] In sum,

---

[4]As if to underscore this point, Fed. R. Crim. P. 42 was amended in 2002 to require a court to "request that the contempt be prosecuted by an attorney for the government" and, "if the government declines the request, the court must appoint another attorney to prosecute the contempt." *See* Fed. R. Crim. P. 42(a)(2) & Advisory Committee Notes on 2002 amendments.

"criminal contempt sanctions are entitled to full criminal process." *Bagwell*, 512 U.S. at 833 (citing *Hicks*, 485 U.S. at 632).

A straightforward application of these principles requires us to vacate Cromer's criminal contempt conviction. First, the transcript of the June 20, 2002 contempt proceeding reveals that the magistrate judge did not adequately inform Cromer of his right to counsel. Indeed, the subject was never addressed. Second, like the district judge in *Neal*, 101 F.3d at 997-99, the magistrate here "improperly assumed a prosecutorial role" by acting both as prosecutor and decision maker. He did not appoint an attorney for the government to prosecute Cromer for criminal contempt; instead, he undertook to prosecute Cromer himself, "to demonstrate that [the court] means what it says." Cromer did not receive the "full criminal process" he was due.

Moreover, the authorizing statute in effect at the time of the contempt hearing did not allow punishment for contempt by fine *and* imprisonment; it required a federal court to choose one or the other. 18 U.S.C. § 401 (2000) ("A court of the United States shall have power to punish by fine *or* imprisonment, at its discretion, such contempt of its authority . . . .") (emphasis added); *United States v. Hawkins*, 76 F.3d 545, 550 (4th Cir. 1996) ("[T]he disjunctive language of 18 U.S.C. § 401 precludes both imprisonment and a fine for a single offense."); *see also* 28 U.S.C. § 636(e)(3)(2000) ("In any case in which a United States magistrate judge presides with the consent of the parties . . . the magistrate judge shall have the power to punish, by fine *or* imprisonment, criminal contempt . . . .") (emphasis added).[5] The punishment the magistrate imposed on Cromer — imprisonment for the remainder of the day of his hearing *and* a fine of $1,500 — thus violated the applicable provisions of federal law in effect at that time.

Therefore, we must vacate the judgment of criminal contempt.

---

[5]In November 2002, Congress amended 18 U.S.C. § 401 and 28 U.S.C. § 636(e)(3) to allow punishment for contempt by "fine or imprisonment, or both." *See* Pub. L. No. 107-273, § 3002(a)(1), (b)(2), 116 Stat. 1758, 1805 (2002).

B.

A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (internal quotation marks and citation omitted). Imposition of civil contempt sanctions requires fewer procedural protections than those necessary for the imposition of criminal contempt sanctions. *See Bagwell*, 512 U.S. 830-31. For example, unlike a finding of criminal contempt, which must rest on proof of guilt beyond a reasonable doubt, a finding of civil contempt can be established by "clear and convincing evidence." *See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000); 11A Wright, Miller & Kane, *Federal Practice and Procedure* § 2960, at 380 (2d ed. 1995). Similarly, because they are civil, not criminal, proceedings, the right to counsel is not guaranteed in civil contempt proceedings.

But "[a] district court's description of a contempt sanction as either civil or criminal is not determinative and must be scrutinized independently by the appellate court." *Buffington v. Baltimore County*, 913 F.2d 113, 133 (4th Cir. 1990). Accordingly, we must decide for ourselves, regardless of how it was labeled below, whether the $1,500 attorneys' fees award imposed on Cromer was in fact a criminal contempt sanction. *See Bradley v. American Household, Inc.*, 378 F.3d 373, 377 (4th Cir. 2004).

The Supreme Court has explained that the "critical features" for determining whether a contempt remedy is civil or criminal "are the substance of the proceeding and the character of the relief that the proceeding will afford." *Hicks*, 485 U.S. at 631.

> When the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained, the contempt is civil; if, on the other hand, the relief seeks to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct, the contempt is criminal.

*Buffington*, 913 F.2d at 133; *see also Hicks*, 485 U.S. at 631; *Bradley*, 378 F.3d at 378. For these reasons, putatively civil contempt sanctions will be held to be criminal sanctions in cases when the fines were "not conditioned on compliance with a court order," "not tailored to compensate the complaining party," but instead "initiated to vindicate the authority of the court and to punish the actions of the alleged contemnor[ ]." *Bradley*, 378 F.3d at 377-79; *Buffington*, 913 F.2d at 133-35.

In this case, in addition to finding Cromer guilty of criminal contempt, the magistrate judge imposed a "civil" sanction of $1,500 to compensate Kraft for attorneys' fees "proximately caused by [Cromer's] defiance of" the magistrate's orders. As in *Bradley* and *Buffington*, despite its label, this is a criminal contempt sanction: it was meant primarily "to vindicate the authority of the court."

The magistrate judge did not condition this "civil" sanction on compliance with a court order. Nor did the judge tailor the sanction to compensate the complaining party. In fact, he took it upon himself to award Kraft attorneys' fees without any indication that Kraft sought such a remedy. In other words, the "civil sanction" could not have been designed "to compensate the complainant for losses sustained" because there was no "complainant" — other than the judge himself.

Moreover, the record demonstrates that the magistrate clearly intended to *punish* Cromer through imposition of the attorneys' fees award. Of course, civil contempt sanctions can serve the purpose of compensating a complainant for losses sustained, and we have recognized attorneys' fees as appropriate compensation. *General Motors*, 61 F.3d at 259-60. But in this case, the judge's stated reasons for the sanction belie any conclusion that it was remedial in nature. As he explained in his Order to Show Cause, "[I]t is now time to demonstrate that [the court] means what it says." Even more telling, at the contempt hearing itself, the judge told Cromer, "[Y]ou need to have some consequences for your obsessive compulsive behavior in this court, . . . you need to know this is serious business filing this mess in our court after being ordered not to." These statements make clear

that the court imposed the attorneys' fees award to punish Cromer and vindicate the court's authority rather than to compensate Kraft.[6]

Because the "civil" sanction requiring Cromer to pay $1,500 in attorneys' fees was actually criminal in nature, it could be imposed only after affording Cromer "full criminal process." Thus, we must vacate it for the same reason we vacate Cromer's criminal contempt conviction: the judge imposed the sanction without the procedural safeguards necessary prior to the imposition of criminal penalties.

V.

For the reasons stated above, we affirm the district court's denial of Cromer's Rule 60(b) motion, but vacate the prefiling injunction and contempt findings, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

[6]In both *Bradley* and *Buffington*, we also noted that the fines were payable to the court, rather than to the complaining party. Here the magistrate judge directed Cromer to pay the attorneys' fees award to Kraft, not to the court. Nevertheless, as explained in the above text, this award could not have been designed to compensate the "complainant," since the judge himself instituted the proceeding; Kraft never requested fees and was, by its own account, "essentially disinterested" in the contempt award. Brief of Appellant at 25.